Billy HITE, Appellant,

and

Bobby Sessions, Thomas E. Jones, Plaintiffs,

v.

William D. LEEKE, Commissioner, J. L. Harvey, Warden of Kirkland Correctional Institution, Appellees.

No. 76–1989.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1977.

Decided Oct. 25, 1977.

---

Robert Guild, Columbia, S. C. (Legal Aid Service Agency, on brief), for appellant.

Emmet H. Clair, Sr. Asst. Atty. Gen., Columbia, S. C. (Daniel R. McLeod, Atty. Gen. of South Carolina, Katherine W. Hill, Asst. Atty. Gen., Columbia, S. C., on brief), for appellees.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Three State prisoners, incarcerated in the South Carolina Kirkland Correctional Institution, complained that, as a result of the conditions of their confinement, they were being subjected to cruel and unusual punishment in violation of the Eighth Amendment. After considering the answer of the defendants and accompanying affidavit, as well as the reply and accompanying affidavits of the plaintiffs, the District Court denied injunctive relief as to one of the plaintiffs since he was no longer confined at Kirkland Correctional Institution and dismissed summarily the complaint as to the other two plaintiffs. The plaintiff Hite alone has appealed. We affirm.

It appears either from the record or from undisputed statements made during oral argument, that the Kirkland Correctional Institution was completed in 1975 at a cost of approximately $12,000,000. It is said to conform in structure and operations to the most modern penal standards. Its grounds comprise some forty acres. Its inmates are allowed to move throughout most of the institutional buildings and over most of the grounds during the day; in addition, they may move freely about their dormitory buildings between 6:00 and 8:00 p. m. There are ample toilet, bath and personal hygiene facilities. The inmates may shower at any time during the day or between 6:00 and 8:00 p. m. The plaintiffs conceded substantially all of this but they claimed nevertheless that the conditions at the Institution constituted cruel and unusual punishment because the inmates were assigned to double occupancy of cells, 65 feet square, which were initially designed for single occupancy, and because the institutional staff was inadequate.

The defendants did not deny that, as originally planned, the cells at the Institution were designed for single occupancy. Because of abnormal increases in the prison population in the State, however, it has been necessary to assign two prisoners to each cell. As a result, there were housed at the Institution at the time this action was begun 810 prisoners. The defendants also concede that they would like additional staff for the facility. They have requested state appropriations for such additional staff but the funds have not been made available. At the present time the staff at the Institution consisted of 165 employees, of whom 107 are correctional officers. They assert, though, that the present staff has satisfactorily maintained order and provided essential services in the prison. On this record, the District Court dismissed the action.

In *Meachum v. Fano* (1976), 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451, the Supreme Court bluntly declared that "federal courts do not sit to supervise state prisons."[1] This expression of cautious restraint in dealing with "the day-to-day functioning of state prisons" and the "discretionary decisions" of their administrators is said to be rooted in judicial concern for "federalism,[2] the separation of powers,[3] and

---

1. *Cf., Rizzo v. Goode* (1976), 423 U.S. 362 at 378, 96 S.Ct. 598, 46 L.Ed.2d 561.

2. Comments, *Confronting the Conditions of Confinement: An Expanded Role for Courts in Prison Reform,* 12 *Harv. Civ. Rights-Civ. Liberties L. Rev.* 367 at 371 (1977).

    The writer illustrates the impact of "federalism" thus:

"* * * When it is a federal court interfering in the administration of a state prison, problems of federalism arise because the court is trenching upon an area of state concern." (at p. 377)

3. The writer in the same Note puts the issue of "separation of powers" in this language:

"* * * Separation of powers concerns arise when a court specifies the details of prison life, thus making decisions which

deference to the expertise of state administrators."[4] But, despite such concerns, such "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution,"[5] and the decisions in which jurisdiction of such claims has been exercised are many.[6]

One of the constitutional guaranties frequently invoked by prisoners in contesting prison conditions is the Eighth Amendment with its protection against "cruel and unusual punishment." This is the constitutional guarantee invoked by the plaintiffs in this case. The history of the evolving meaning of the critical constitutional phrase "cruel and unusual punishment" has been recently traced in *Estelle v. Gamble* (1976), 429 U.S. 97 at 102–3, 97 S.Ct. 285, at 290, 50 L.Ed.2d 251. There, the Court said that the proscription embraced within such term was not to be considered as a static but rather as a progressive concept covering any punishment of a prisoner which at the time was regarded as "incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" It has recently been said, however, that it

must not be taken as a charter for courts "to exercise judicial powers for the attainment of what [they] * * * might like to see accomplished in the way of ideal prison conditions," but only as a power to eliminate those conditions sufficiently offensive to society's improving "standards of decency," as will meet the concept of "cruel and unusual" punishment. *Newman v. State of Ala.* (5th Cir. 1977), 559 F.2d 283.[7] Applying "standards of decency," the denial of essential food, clothing or medical needs, the failure to provide reasonable protection from constant threats of violence and sexual assault by his fellow inmates, excessive corporal punishment, the denial of decent and basically sanitary living conditions and "the deprivation of the basic elements of hygiene" have all been found to be clear violations of the Eighth Amendment standard. *McCray v. Sullivan* (5th Cir. 1975), 509 F.2d 1332, *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975).

In asserting their claim under this particular constitutional provision, the plaintiffs do not allege that they have been subjected to any corporal punishment or extreme ver-

might better be made by popularly-elected officials." (at p. 377)

4. *See Procunier v. Martinez* (1974), 416 U.S. 396, at 404–5, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224:

"* * * the problems of prisons in America are complex and intractable, and * * * they are not readily susceptible of resolution by decree."

In *Sweet v. South Carolina Dept. of Corrections* (4th Cir. 1975), 529 F.2d 854, 859, we said:

"* * * Because of this want of judicial expertise, 'prison officials must be accorded latitude in the administration of prison affairs' [citing cases] and their judgments are entitled to 'great weight' [citing cases]."

In *Newman v. State of Ala.* (5th Cir. 1977), 559 F.2d 283, the Court said:

"* * * Wide ranging deference must be accorded with the decisions of prison administrators. They, and not the courts, must be permitted to make difficult judgments concerning prison operations, *Jones v. North Carolina Prisoners' Labor Union, Inc.* [1977], 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629. In his concurring opinion in *Jones,* Mr. Chief Justice Burger wrote that in penal matters the federal courts may not 'second guess'

legislatures and prison administrators except in the most extraordinary circumstances."

5. *Procunier v. Martinez, supra,* 416 U.S. at 405, 94 S.Ct. at 1807.

6. However, it has been said that recent cases like *Meachum* and *Rizzo* indicate that the Supreme Court is uncomfortable with broad federal court efforts to reform state institutions and are indicative of an intent to limit "the power of federal courts to interfere in the internal administration and operation of state institutions" to instances of "a clear constitutional violation." *Ibid.,* 12 Harv. Civ. Rights-Civ. Liberties L. Rev. at 371.

7. In *Newman v. State of Ala., supra,* the Court said:

"* * * The remedy must be designed to accomplish that goal, not to exercise judicial power for the attainment of what we as individuals might like to see accomplished in the way of ideal prison conditions. There are those who would argue that imprisonment in any form is cruel and unusual. The Amendment, however, recognizes the right to punish for criminal conduct as long as that punishment does not escalate to the cruel and unusual."

bal or physical abuse by the prison personnel, or have been denied adequate food, clothing or medical attention, or have been confined to filthy or uninhabitable cells without adequate sanitary facilities, which are the common staples in charges of this character.[8] They do make a stab, as we have indicated, toward a charge of a violation of the duty to take reasonable steps to provide adequate correctional personnel to protect them against an unreasonable risk of physical harm. They, however, instance no case in which any one of them has ever been threatened at the facility by either another inmate or by a guard. They do not claim actually that any other inmate has been subjected to any violence at the hands of another inmate or of a guard. The only situation where the plaintiffs declare any violence occurred was based on a rumor that a nurse at the prison infirmary had been threatened with a knife by an inmate who sought unsuccessfully to rape her. Over against this, the warden of the Institution filed an affidavit that there had been no injury suffered by an inmate at the hands of another inmate during the period in question.

In *Woodhous v. Commonwealth of Virginia* (4th Cir. 1973), 487 F.2d 889, 890, we canvassed the circumstances under which "threat of violence" or actual "sexual assaults" would rise to the dignity of a violation of the Eighth Amendment's requirement of reasonable protection against unreasonable risk of harm in a prison environment. We specifically declared there that an "occasional" attack by one prisoner on another in the prison was not sufficient but that only when the record shows a "con-

stant threat" or frequent "sexual assaults" is there a basis for a finding of "cruel and unusual punishment." And this accords with the rule stated in the authorities from other circuits and in the commentaries.[9] It is manifest that the plaintiffs make no claim that meets the test of "constant threats" or of "frequent physical abuse." There is manifestly then no basis for a claim that the prison has a correctional staff insufficient in numbers to protect the plaintiffs against any unreasonable risk of intentional harm at the hands of other inmates. This means that the only claim on which plaintiffs can assert a right to relief turns on whether double occupancy of the prison cells constitutes cruel and unusual punishment.

The plaintiffs contend that the dual assignment of two prisoners to a room sixty-five feet square in this prison is *per se* unconstitutional. As we have already pointed out, this assignment to cells is only at night between the hours of 8 p.m. and 6 a.m.; at all other times, the prisoners enjoy a wide freedom of movement and ample opportunity for exercise and recreation. Nor is overcrowding a part of a larger problem of unsanitary conditions or of a pervasive air of physical danger, giving rise to what has been described as the "totality of conditions approach" in this context. *See, ibid.* 12 Harv. Civ. Rights-Civ. Liberties L. Rev. at 372; *Costello v. Wainwright* (M.D.Fla.1975), 397 F.Supp. 20, 32, *aff'd,* 525 F.2d 1239, *rehearing en banc granted* 5 Cir., 528 F.2d 1381, *rev. and remanded on other grounds,* 5 Cir., 539 F.2d 547 (1976); *Pugh v. Locke, supra.*[10] The plaintiffs con-

---

**8.** *See, Pugh v. Locke* (M.D.Ala.1976), 406 F.Supp. 318, *aff'd in part and rev. in part sub nom., Newman v. State of Ala.,* 5 Cir., 559 F.2d 283.

**9.** *See, Martinez Rodriguez v. Jimenez* (D.P.R. 1076), 409 F.Supp. 582, 594, *aff'd,* 537 F.2d 1; *Pugh v. Locke, supra; Gates v. Collier* (N.D. Miss.1972), 349 F.Supp. 881, 894, *aff'd,* 5 Cir., 501 F.2d 1291.

*See, also,* 12 Harv. Civ. Rights-Civ. Liberties L.Rev., *supra,* at 373:

"* * * Courts have found a violation of the eighth amendment when living conditions

deprive inmates of some or all of six basic rights: * * *

"(2) the right to be free from frequent physical abuse by other inmates or guards."

In Note, *Constitutional Law—Conditions of Confinement for Administratively Segregated Prisoners,* 55 *N.C.L.Rev.* 473, 476 (1977), the editor describes this ground of attack as "clearly inadequate protection from other inmates."

*See, also,* Note, *Prisoners' Rights—Jailer's Duty of Protection,* 34 *La.L.Rev.* 685 (1974).

**10.** In *Costello,* four inmates were assigned to a cell approximately 50 feet square under condi-

ceded during oral argument that they knew of no case, and neither do we, that holds dual assignment of prison inmates alone to constitute "cruel and unusual punishment." They do cite certain cases from the Second Circuit that, because of their special circumstances, it was found to be a violation of constitutional rights to confine two pretrial detainees in a single cell. *Ambrose v. Malcolm* (S.D.N.Y.1976), 414 F.Supp. 485; *Detainees of Brooklyn H. of Det. for Men v. Malcolm* (2d Cir. 1975), 520 F.2d 392. In the latter case, however, the Court was careful to emphasize that its ruling was strictly confined to pretrial detainees and was without application to convicted prisoners. Thus the Court declared:

"Here we are concerned only with the confinement of pretrial detainees and not convicted inmates. The difference between these two categories and the necessity for different treatment have been frequently emphasized. Pretrial detainees are no more than defendants waiting for trial, entitled to the presumption of innocence, a speedy trial and all the rights of bailees and other ordinary citizens except those necessary to assure their presence at trial and the security of the prison. In providing for their detention, correctional institutions must be more than mere depositories for human baggage and any deprivation or restriction of the detainees' rights beyond those which are necessary for confinement

alone, must be justified by a compelling necessity." (p. 397)

And, lest there be any misunderstanding of its decisions, the Court concluded its opinion by stating that "[s]ince the district court's order of October 2, 1974 is not limited to detainees, its restriction is too broad and the court is accordingly directed to modify its order to limit the restriction to detainees only."[11] It is accordingly clear that these cases, cited by the plaintiffs, lend no support to the claims of the plaintiffs.[12]

So far as convicted prisoners are concerned, we have recently held specifically that the assignment of three prison inmates to a cell about the size of those with which we are concerned did not amount to "cruel and unusual punishment." *Crowe v. Leeke* (4th Cir. 1976), 540 F.2d 740. The Court in that case emphasized that there was no contention there, just as there is not here, that the prisoners had been "subjected to mental abuse or corporal punishment; * * deprived of the basic implements of personal hygiene; * * * [or] that his cell failed to meet reasonable sanitary standards." The petitioner's complaint—similar to that here—was simply that the assignment of three prisoners, confined in maximum security, to a cell was *per se* unconstitutional. Finding that there was no indication "that the overcrowding has resulted from an 'arbitrary or capricious' exercise of judgment by prison officials," the number of inmates, who may be safely assigned to a cell is a

---

tions denying basic conditions of hygiene and health and involving a reign of violence.

See, also, Note, *Overcrowding in Prisons and Jails: Maryland Faces a Correctional Crisis*, 36 *Md.L.Rev.* 182, 198 (1976):

"* *' * * It is only when overcrowding is the cause of deplorable or inhumane conditions or serious deprivations that overcrowding becomes unconstitutional."

**11.** 520 F.2d at 399.

**12.** Other cases in which the distinction in rights between a pretrial detainee and a convicted prisoner is made are *Hampton v. Holmesburg Prison Officials* (3d Cir. 1976), 546 F.2d 1077, 1079–80; *Duran v. Elrod* (7th Cir. 1976), 542 F.2d 998 at 999. In the latter case, the Court said that it is generally "held that suits by pretrial detainees alleging conditions amounting to cruel and unusual punishment are better

analyzed as due process attacks on conditions that exceed the sole permissible state interest of insuring presence at trial."

It is of interest that in one of the cases cited by the plaintiffs, the relief granted as it related to assignments to cells of what apparently were pretrial detainees was as follows:

"The first change which must be made is a reduction of inmate population to a point at which there are *never more than two persons per cell* confined to the jail." (Italics added) *Jones v. Wittenberg* (N.D.Ohio 1971), 330 F.Supp. 707, 714, *aff'd sub nom.*, *Jones v. Metzger* (6th Cir. 1972), 456 F.2d 854.

For further discussion of the right of pretrial detainees in connection with cell assignments, see Note, *Overcrowding in Prisons and Jails: Maryland Faces a Correctional Crisis*, 36 *Md.L. Rev.* 182 at 192–7 (1976).

matter resting within the sound discretion of the prison administration, and the claim of cruel and unusual punishment was dismissed.[13] Similarly in this case, it is clear that the defendants have not acted arbitrarily or capriciously in their assignments of inmates nor have they, in their dual assignments, been "the cause of deplorable or inhumane conditions." [14] The decision in *Crowe* would appear conclusive on the issue of dual assignment of inmates in this case.

Accordingly, the dismissal of the action is

*AFFIRMED.*

---

**13.** 540 F.2d at 742.

**14.** *See, ibid.* 36 *Md.L.Rev.* at 198.