Robert L. STICKNEY, Albert Robert, Individually and on behalf of all other persons similarly situated at the Northern Nevada Correctional Center, and the Inmate Advisory Committee of the Northern Nevada Correctional Center, Plaintiff,

v.

Robert LIST, Individually and in his official capacity as president of the Board of State Prison Commissioners; Richard Bryan, Individually and in his official capacity as member of the Board of State Prison Commissioners; William Swackhamer, Individually and in his official capacity as secretary of the Board of State Prison Commissioners; Charles L. Wolff, Jr., Individually and in his official capacity as Director of the Department of Prisons; William Lattin, Individually and in his official capacity as Superintendent of Northern Nevada Correctional Center; Elmer Davis, Individually and in his official capacity as Captain of Northern Nevada Correctional Center; and Does I through X, Individually and in their official capacities as Agents and Employees of the named Defendants, Defendants.

No. CIV–R–79–11–ECR.

United States District Court, D. Nevada.

July 28, 1981.

618

Robert L. Stickney, Inmate Counsel Substitute, in pro. per.

Richard H. Bryan by Ernest Adler, Deputy Atty. Gen., Criminal Division, Carson City, Nev., for defendants.

EDWARD C. REED, Jr., District Judge.

This case involves conditions of confinement at the Northern Nevada Correctional Center (NNCC) located at Stewart,

Nevada. The Court, pursuant to its authority under Rule 706 of the Federal Rules of Evidence, appoints Jerry Enomoto, past Director of the California Department of Corrections, as an expert witness, to prepare a written report including his findings, to testify in this action, and to otherwise act herein in accordance with said rule. A hearing was held herein on April 20, 1981, at which time the parties agreed to the appointment of Mr. Enomoto. Mr. Enomoto's report shall consider, but will not be limited to, a determination of whether or not said institution has met its obligation under the Eighth Amendment to the Constitution to furnish sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care and physical safety. *See Bell v. Wolfish*, 441 U.S. 520, 529, 99 S.Ct. 1861, 1868, 60 L.Ed.2d 447 (1979) (n.11), citing *Wolfish v. Levi*, 573 F.2d 118, 125 (2nd Cir. 1978), both cases cited with approval in *Wright v. Rushen*, 642 F.2d 1129, 1130 (1981).

■ In his analysis, Mr. Enomoto should be aware that the Ninth Circuit had rejected the "totality of circumstances" approach used by the district court in *Wright. Id.* The Ninth Circuit stated that in order to conduct a proper analysis of the adequacy of prison quarters, food, medical care, etc., a court must determine whether each condition is compatible with "the evolving standards of decency that mark the progress of a maturing society." *Wright, supra* at 1133 citing *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

■ While the Ninth Circuit, in *Wright*, rejected the "totality of circumstances" approach, it noted that each condition of confinement does not exist in isolation and as a consequence a " . . . court must consider the effect of each condition in the context of the prison environment, especially when the ill-effects of particular conditions are exacerbated by other related conditions." *Wright, supra* at 1133. Furthermore, any analysis must consider the cost to determine if it would be unnecessarily expensive and whether or not it would impair prison security. *Id.*

■ As further guidance Mr. Enomoto should be aware that " . . . the Constitution does not mandate comfortable prisons . . . persons convicted of serious crimes cannot be free of discomfort." *Rhodes v. Chapman*, —— U.S. ——, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (Supreme Court held double celling not cruel and unusual punishment). The high Court stated that the Eighth Amendment prohibits punishments, " . . . although not physically barbarous, [which] involve the unnecessary and wanton infliction of pain . . ." *Id.* at ——, 101 S.Ct. at 2398 citing *Gregg v. Georgia*, 428 U.S. 153, 171–173, 96 S.Ct. 2909, 2924–25, 49 L.Ed.2d 859 (1976); " . . . or [are] grossly disproportionate to the severity of the crime." *Rhodes, supra* —— U.S. at ——, 101 S.Ct. at 2398 quoting *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion); or " . . . [which are] totally without penalogical justification." *Rhodes, supra* —— U.S. at ——, 101 S.Ct. at 2398 quoting *Gregg, supra* 428 U.S. at 183, 96 S.Ct. at 2929; *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The proper standard to be applied according to the high Court, is "the minimal measure of life's necessities" or whether or not there has been "unquestioned and serious deprivations of human needs" *Rhodes, supra* —— U.S. at ——, 101 S.Ct. at 2399.

■ The core areas for Mr. Enomoto's consideration are shelter, sanitation, food, personal safety, adequate clothing, and medical care at NNCC. *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) cited with approval in *Rhodes, supra*. The concepts of mobility, classification and idleness do not reach constitutional dimension. *Ramos, supra* at 566–67.

More specifically, as to certain conditions Mr. Enomoto's analysis should be made in light of the following:

■ *Prisoner safety*—An inmate has a right to be incarcerated in a reasonably safe environment. *See Ramos, supra* at 572, citing *Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979); *Hite v. Leeke*, 564 F.2d 670, 673

(4th Cir. 1977); *Finney v. Arkansas Board of Corrections,* 505 F.2d 194, 201 (8th Cir. 1974); *Doe v. Lally,* 467 F.Supp. 1339 (D.Maryland 1979). This right includes being reasonably protected from constant threats of violence and sexual assaults from other inmates. *Id.* An inmate need not be assaulted to obtain relief. *Woodhous v. Virginia,* 487 F.2d 889, 890 (4th Cir. 1973).

■■■ It is the state's responsibility to protect its prison inmates. While it may be necessary to restrict their freedoms in certain ways to protect them, the state cannot simply force the inmates to choose between relinquishing their constitutional rights and jeopardizing their lives. *Rudolph v. Locke,* 594 F.2d 1076 (5th Cir. 1979). This does not require that prison officials completely obviate prison violence but that it be significantly controlled. More precisely, Mr. Enomoto's analysis should investigate whether or not a deliberate indifference to the legitimate safety needs of the inmates exists at the Northern Nevada Correctional Center. *Ramos, supra* at 573. Such an indifference may be evident from inadequate staffing or inadequate design of the facility causing limited visibility for guards to properly monitor from secure vantage points, inmate movement in the center.

■■■ *Food*—The inmates have a right to reasonably adequate food. Their food must be nutritionally adequate, prepared and served under conditions which do not present an immediate danger to the inmate who consumes it. *Ramos, supra* at 570–71; *Estelle v. Gamble, supra.* The mere fact that the food is cold or otherwise cosmetically unappetizing does not mean that it does not meet constitutional standards. *See Wright, supra.*

■■■ *Shelter*—An inmate has the right to shelter which does not cause physical degeneration or threaten his mental well being. *See Battle v. Anderson,* 564 F.2d 388 at 403 (10th Cir. 1977).

■■■ *Medical care*—There exists a constitutional obligation to provide medical care for those whom it is punishing by incarceration. *Estelle, supra,* 429 U.S. at 103, 97 S.Ct. at 290. This obligation is violated when a deliberate indifference to the serious medical needs of prisoners is exhibited on behalf of prison officials. *Id.* Such indifference is shown when officials have prevented an inmate from receiving recommended or prescribed treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment. *See e. g., Todaro v. Ward,* 565 F.2d 48 (2nd Cir. 1977); *Inmates of Allegheny Cty. Jail v. Pierce,* 612 F.2d 754 (3rd Cir. 1979); *Newman v. Alabama,* 349 F.Supp. 278, 284–86 (M.D.Alabama 1972); *Laaman v. Helgemoe,* 437 F.Supp. 269, 312 (D.New Hampshire 1977).

■■■ Accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment. However, proof of repeated examples of negligent acts which indicate a pattern of conduct by prison medical staff, or proof of systemic and gross deficiencies in staffing, facilities, equipment or procedures may be sufficient to show that the inmate population is effectively denied access to adequate medical care. *Id.*

■ As to the other areas, *e. g.,* sanitation of the facility and clothing of the inmates, Mr. Enomoto may analogize, as appropriate, the above standards as applied to other inmate complaints. His focus, in any event, should be on the "deliberate indifference" of officials and if conditions as they exist are compatible with evolving standards of decency that mark the progress of a maturing society. *Wright v. Rushen, supra* at 1133.

Mr. Enomoto, during any inspection of NNCC which he makes in order to prepare his report, shall be accompanied by Mr. Stickney and by Deputy Attorney General Ernest Adler or his designate.

Upon the completion of Mr. Enomoto's report, containing his findings, he shall cause a copy of the same to be filed with the Court and a copy to be served upon Mr. Stickney and Mr. Adler, as attorney for

defendants. Within 90 days (but not sooner than 30 days) after the report is filed and served in this manner, the Clerk of the Court shall set the case for a continuation of the trial. During the period subsequent to the filing and serving of the report, and up until 10 days prior to the date set for the continuation of the trial, plaintiffs and defendants shall be entitled to depose Mr. Enomoto at a date and time convenient to him and to the parties. If Mr. Enomoto and the parties are unable to agree as to such date and time for the taking of his deposition, application in that respect shall be made to the Court. The deposition shall be taken by the usual means or by tape recorder, provided, however, if the deposition is to be taken by tape recorder, then a further motion shall be made to the Court so that the Court may fix the conditions under which the deposition shall be taken in that event. At the continuation of the trial, the testimony of Mr. Enomoto shall be received and the parties shall be permitted to present additional evidence and testimony, relating to the contents of the report to the extent that evidence or testimony pertaining thereto has not heretofore been received.

Mr. Enomoto's fee will be borne equally by the plaintiffs and the defendants.