**Gary Lee HARRIS, Plaintiff,**

v.

**Edward MURRAY, Director, et al., Defendants.**

**Civ. A. No. 89-0257-AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 13, 1991.

Gary Lee Harris, Burkeville, Va., pro se.

William W. Muse, Asst. Atty. Gen., Com. of Va., Richmond, Va., for defendants.

## MEMORANDUM OPINION

BRYAN, Chief Judge.

Plaintiff, Gary Lee Harris, a Virginia inmate, brings this action pursuant to 42 U.S.C. § 1983 asserting numerous allegations relating to conditions of confinement at the Nottoway Correctional Center.[1] Defendants have submitted a motion for summary judgment. Plaintiff was advised of his right to respond and has done so.[2] Accordingly, the Court finds this matter ripe for disposition and for the reasons stated below, defendants' motion is granted.[3]

Plaintiff alleges:

---

1. Plaintiff has also submitted motions to amend his pleadings to add complaints relating to recent legislation that allegedly discriminates against prisoners generally, along with other allegations. This motion was submitted six months after the defendants were ordered to answer the initial complaint. As these allegations present new complaints, primarily unrelated to those initially asserted, and in consideration of the amount of time that has passed since defendants were ordered to answer the complaint, plaintiff's motions to amend are denied. Plaintiff is free to assert these claims in a future action.

2. In his response to defendants' motion for summary judgment, plaintiff stipulates that Edward Murray should be dismissed as a party to this action. Therefore, as there has been no personal involvement alleged on the part of defendant Murray in the acts or omissions complained of and as plaintiff has stipulated to his dismissal, Edward Murray is dismissed from this action.

3. The Court also has before it a motion to compel discovery submitted by plaintiff. As the Court does not find it necessary to proceed with discovery, plaintiff's motion to compel discovery is denied.

1) that he is forced to sit in a smoke filled visiting room;

2) that he and his wife are harassed in the visiting room by a sergeant Asal;

3) that he was unlawfully placed in segregation for 12 days by sergeant Asal and Bennett;

4) that while in segregation he was denied his reading glasses for 12 days;

5) that overcrowded conditions at the institution has caused many problems, such as:

   a) poor medical care,

   b) cold food,

   c) a lack of places to sit when eating,

   d) a lack of jobs,

   e) environmental health and safety problems and

   f) increased violence.

Plaintiff alleges that he is forced to sit in a smoke filled room while visiting with his wife. The visiting room at Nottoway Correctional Center holds approximately 250 people. Although it is equipped with an adequate ventilation system, there still may be some smoke when many of the occupants are smokers. If the ventilation system is turned on it makes the room very cold, therefore, it is turned on and off periodically to reduce the amount of smoke. Additionally, the back door is left slightly open and a fan is placed there to help alleviate the smoke in the visiting room. Inmates and their visitors also have the option of going out to a patio. Every effort is made to reduce the amount of smoke in the visiting area.[4]

Plaintiff's second claim regarding the visiting room is that he and his wife are harassed there by Sgt. Asal. According to Mr. Asal, plaintiff and his wife had problems following the various rules and regulations that were to be followed during visiting hours. On January 22, 1989, following an incident, a charge was placed against plaintiff for disobeying the direct order to leave the visiting room in a timely manner. Plaintiff was placed in prehearing detention as a result of this charge. Mr. Asal stated that the same action would have been taken against any other inmate who refused to obey the rules pertaining to visiting hours.[5]

■ Matters of visitation are within the discretion of prison administrators and should only be subject to federal court supervision if a prison's practice in this field interferes with the attorney-client relationship. *Feazell v. Augusta County Jail,* 401 F.Supp. 405, 407 (W.D.Va.1975). Further, neither prisoners nor visitors have a constitutional right to prison visitation. *White v. Keller,* 438 F.Supp. 110 (D.Md.1977).

■ Plaintiff's allegation regarding the adequacy of the visitation room must be dismissed. Prison officials have taken adequate measures to alleviate the inconvenience of occasional incidents when the room has several smokers. Further, plaintiff has not alleged any serious medical problems that have resulted from this condition. He has only alleged the obvious discomfort a non-smoker experiences when others around him are smoking. Generally, conditions not cruel and unusual under contemporary notions of decency are not unconstitutional. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). This condition does not lead to a constitutionally significant level of pain nor does it appear that this condition has been inflicted recklessly or wantonly by prison officials. *See Shrader v. White,* 761 F.2d 975, 979 (4th Cir.1985). Accordingly, this claim must be dismissed.

■ Plaintiff's harassment claim should also be dismissed. The Supreme Court has stressed the importance of granting prison officials significant latitude in the area of prison security. "... [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both con-

---

**4.** Affidavit of W.L. Asal, lieutenant, institutional training officer at Keen Mountain Correctional Center, formerly employed with the Nottoway Correctional Center.

**5.** *Ibid.*

victed prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). "Prison officials must be free to take appropriate action to insure the safety of inmates and corrections personnel·and to prevent escape or unauthorized entry.... [E]ven when an institution or restriction infringes a specific constitutional guarantee such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* at 547, 99 S.Ct. at 1878. Further, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices designed to preserve internal order and discipline and maintain institutional security. Unless substantial evidence indicates that response to these needs exaggerated, courts should ordinarily defer to officials' expert judgment. *Bell v. Wolfish*, supra.

The Fourth Circuit has made it clear that federal courts do not have the role of super wardens of state penal institutions. *Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976). Additionally, it is well settled that the courts do not sit to supervise state prisons. *Meachum v. Fano*, 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). In the instant case, plaintiff's visitation time had expired for the day and defendant Asal asserts that plaintiff refused to leave in a timely manner. Plaintiff claims that he did not refuse to leave the room but was singled out for harassment by prison officials.

Although plaintiff feels that he was being harassed by the officer who was attempting to clear the visitation room, it is obvious to the Court that the officer was merely trying to organize the inmates who were exiting the visiting room and make sure that there exit was in a timely and orderly fashion. Prison order and security is within the authority and discretion of prison officials. Plaintiff does not assert that he was harmed in any way, physically or emotionally. Therefore, the Court finds that this claim is without merit and must be dismissed.

Plaintiff asserts that he was unlawfully placed in segregation for twelve days as a result of a charge written on him concerning the visitation room incident. Officer Asal stated that he placed this charge against plaintiff for disobeying a direct order to leave the visiting room in a timely manner. Specifically, plaintiff alleges that he was not given a hearing before he was placed in detention. Defendants state that temporary reclassification is justified when prison officials believe the prisoner is guilty of a violation of the rules.

"Prison officials have broad administrative and discretionary authority over the institutions they manage and lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Further, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Id.* at 468, 103 S.Ct. at 869. Lastly, "the isolation of a prisoner pending investigation of misconduct charges against [a prisoner] serves important institutional interests relating to the insulating of possible witnesses from coercion or harm." *Hewitt*, at 473, 103 S.Ct. at 872.

Plaintiff claims essentially that he was denied due process as he was not given a hearing before being placed in detention. The Court finds this argument meritless. Plaintiff received a charge against him stating that he violated a direct order of an official. It was within the discretion of the administration to place plaintiff in pre-hearing detention prior to receiving a hearing to determine whether or not the charges were accurate and warranted by the official.

As defendants have stated, plaintiff does not allege that he did not receive adequate due process after his brief period in detention. Nor does he state that the conditions of his confinement were less than adequate. As it appears to the Court that defendants acted reasonably and within their discretion in maintaining internal peace and order within the institution, this claim is dismissed.

Plaintiff alleges that while he was segregated for twelve days, he was denied his reading glasses. Moreover, he states that it was possible that his eyes could have deteriorated or that he may have possibly become blind as a result of defendants' action.

Following his receipt of an institutional charge, plaintiff was placed in general detention. Prior to being placed in detention, his personal property was inventoried. Plaintiff had two pairs of glasses in his possession. The inventory sheet reflects that he kept one pair in his possession and the other pair went into storage while he was in detention. Further, defendants state that if he had requested the other pair, they would have been given to him.[6]

▮ Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To state a constitutional claim under § 1983, the plaintiff must allege facts tending to show that the defendants were deliberately indifferent to plaintiff's serious medical needs and that they acted under color of state law. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

▮ Plaintiff has failed to state facts that indicate deliberate indifference to his need for reading glasses while he was in segregation. Although plaintiff states that he did not possess even one pair of his reading glasses, the Court does not find that plaintiff was denied attention to a serious medical need and certainly was not treated with deliberate indifference to a serious medical need. Even if plaintiff was denied his reading glasses the entire period of time he was in segregation (approximately ten days), this treatment is not so harsh as to be cruel and unusual treatment. Although the Court recognizes that plaintiff was inconvenienced for this period of time, the alleged treatment does not rise to the level of cruel and unusual punishment. Therefore, this claim must be dismissed.

▮ Plaintiff alleges that overcrowded conditions at the facility has caused several problems within the institution. The first of these is generally inadequate medical care because he alleges that the medical department is understaffed. He states that this causes an "excessive" waiting period to see a doctor or dentist.

Defendants have submitted and relied on the affidavit of Warden Garraghty which states the following: Nurses at the facility are on duty 24 hours a day, and an institutional doctor is at the facility four days a week for eight to nine hours each day. Additionally, one institutional doctor is on duty once a week in the evenings. During sick call (which is conducted every morning), inmates have the opportunity to put their name on a list for any minor problems that they might be experiencing. Inmates who are experiencing serious medical problems, including accidents or injuries, are immediately brought to the medical treatment department.

Plaintiff's medical record indicates that he has only been seen by the medical staff on two different occasions. The first occasion was on December 19, 1988 after his request was submitted on December 6, 1988. His request for medical treatment concerned the problem that he was experiencing with hair loss. He was required to wait approximately two weeks as his problem was not considered a serious one. On February 3, 1989 plaintiff submitted a request to see the doctor for an eye examination. He was seen and examined on February 10, 1989.[7]

As stated, plaintiff must show that defendants have been deliberately indifferent to his serious medical needs before a violation of his constitutional right to be free from cruel and unusual punishment can be shown. This plaintiff has failed to do. Plaintiff concedes that his condition at the time was "minor." The Court finds it difficult to find that an inmate experiencing hair loss is a serious medical need. In any case, plaintiff's condition was treated with-

---

6. Affidavit of David Garraghty, Warden of the Nottoway Correctional Center.

7. Affidavit of Warden Garraghty.

in a reasonable amount of time. The same is true for the attention given to him when he requested a routine eye exam. A seven day delay in the absence of an emergency was appropriate given the circumstances.

■ Essentially, plaintiff disagrees with the diagnosis and the delay that he experiences when he has a medical need. Disagreements between an inmate and a physician over treatment do not state a claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 949 (4th Cir.1985). Even if plaintiff has established that his condition was misdiagnosed, deliberate indifference which might justify relief is ⁻not shown. *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Plaintiff's allegations and defendant's uncontested affidavit together convince the court that at all times plaintiff was given at least adequate medical care. It is not the function of this Court to second-guess the good faith medical judgments made by physicians or their staff concerning the treatment of inmates. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Accordingly, plaintiff's medical claims are dismissed.

Plaintiff further alleges that the food he receives at the institution is cold. He states that when food is not kept at a particular temperature, there is a risk of bacteria growth on the food. Defendant Garraghty states that he checked with the food service manager regarding this situation and has determined that although there have been occasions where cold food has been received by an inmate, it has been on rare occasions. Inmates in one building are normally called for their meals and after they have been served, the next building is called. Usually, the food stays heated at the serving line until all inmates are served. As the serving trays become empty, they are refilled with hot food. The dining room staff is knowledgeable and experienced when it comes to the amount of food required to feed in the inmate population. Accordingly, defendant Garraghty asserts that an adequate amount of food is prepared and that there have been no re-

cent problems with the food that is prepared for the inmate population.[8]

■ Inmates have a right to adequate nourishment from food served at the prison. *See O'Lone v. the Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) *quoting, Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Ross v. Blackledge*, 477 F.2d 616, 618–19 (4th Cir.1973). The Court finds that plaintiff's claims simply do not support a finding that his meals were nutritionally inadequate. Plaintiff does not state a constitutional claim for inadequate nutrition merely because there were occasions when plaintiff considered his food inedible or inadequately warmed. *See Lunsford v. Reynolds*, 376 F.Supp. 526 (W.D.Va.1974). Further, he has not alleged that he has suffered from any serious health problems as a result of the type of food or the way the food is prepared and served. Therefore, this claim is dismissed.

■ Plaintiff further alleges that there is insufficient seating space in the dining area of the institution and occasionally he was forced to stand while eating. At Nottoway, the dining area space equals 4,411 square feet and is equipped to feed approximately 283 inmates at a time. Normally, however, fewer inmates are fed at a time.[9] Plaintiff's claim does not state sufficient facts to warrant a finding of a constitutional violation under the Eighth Amendment. It can not be said that this condition amounts to cruel and unusual punishment. As stated, "to the extent that conditions are restrictive and even harsh, they are part of the penalty criminal defendants must pay for offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Accordingly, this claim is dismissed.

■ In his complaint plaintiff claims that there are not enough jobs for the inmate population at this facility. As of December 22, 1989, records reveal that there were 841 jobs available to the inmate population and that 82% of the inmate pop-

---

**8.** Affidavit of Warden Garraghty.

**9.** Affidavit of Warden Garraghty.

ulation had jobs. Additionally, records indicate that plaintiff has been working as a houseman since May of 1989.[10] However, there is no constitutional right to an institutional job or, in fact, to rehabilitation at all. *See Bowring v. Godwin*, 551 F.2d 44, 48 n. 2 (4th Cir.1977). In any case, the Court finds that the job availability at this institution is sufficient. This claim therefore, is dismissed.

Plaintiff alleges that due to the alleged overcrowded conditions, environmental health, violence and safety hazards are a problem. Defendants assert that institutional inspections are conducted on a weekly basis and a 90% compliance is required at all times. Any problems noted during the inspections are corrected as quickly as possible.[11]

Plaintiff has failed to show that overcrowding itself is a problem nor is the overall condition of the institution regarding the environment and safety factors mentioned above. In January 1989 the facility housed 970 inmates. At that time the maximum number permitted was 980 inmates. There are currently 1,046 inmates with a maximum capacity of 1,050 inmates.[12]

Double celling of prisoners does not amount to an Eighth Amendment violation where other prison living conditions are constitutionally adequate. *Rhodes v. Chapman*, supra. Although a cell is designed for one inmate, double or even triple occupancy is not in itself cruel and unusual punishment. *Hite v. Leeke*, 564 F.2d 670 (4th Cir.1977). As there appears to be no specific problem plaintiff asserts with regard to the number of inmates located at this facility except those which were previously disposed, the Court dismisses plaintiff's allegation that the number of inmates at this institution has created an unsafe, hazardous and violent facility.

For the foregoing reasons, the Court finds that the conditions of which plaintiff complains at Nottoway Correctional Center do not amount to cruel and unusual punishment so as to violate the Eighth Amendment. Accordingly, defendants' motion for summary judgment is granted and this action is dismissed.

An appropriate order shall issue.

---

**10.** *Ibid.*

**11.** Affidavit of Warden Garraghty.

**12.** *Ibid.*