Eddie WILLIAMS, Plaintiff–Appellant,

v.

J.H. GRIFFIN, Superintendent; J.C. Harris, Jr., Area Administrator; Aaron J. Johnson, Secretary of Corrections, Defendants–Appellees.

No. 89–6409.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1991.

Decided Dec. 30, 1991.

Eric J. Glassman, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., argued (Steven H. Goldblatt, Director, Beth E. Cook, Supervising Atty., Lisa Ellis, Christine R. Engelmaier, Student Counsel, on brief), for plaintiff-appellant.

Ronna Dawn Gibbs, Associate Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., argued (Lacy H. Thornburg, Atty. Gen., Sylvia Thibaut, Asst. Atty. Gen., on brief), for defendants-appellees.

Before HALL and MURNAGHAN, Circuit Judges, and WILLIAMS, District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

Eddie Williams, a North Carolina prisoner, filed a *pro se* verified complaint under 42 U.S.C. § 1983 seeking monetary damages, an injunction and declaratory relief as a result of prison overcrowding combined with unsanitary conditions. The defendants, various state prison officials ("the Prison Officials"), moved for summary judgment and dismissal. The district court notified Williams of the filing of the summary judgment motion and motion to dismiss and of his need to respond to the motions. However, Williams failed to respond to the defendants' motions.

The case was referred to a magistrate, who recommended that the motion for summary judgment be granted and the case dismissed. The district court entered judgment, granting the Prison Officials' motion for summary judgment and dismissing Williams' complaint. An appeal followed.

### I. Background

Williams, an inmate, was assigned to Hoke Correctional Institution ("Hoke") on December 11, 1984. He filed a verified complaint on October 19, 1988. In his verified complaint, Williams alleged that Hoke was unconstitutionally overcrowded, with twelve persons to a cell. He further alleged unsanitary conditions in Hoke, including one toilet bowl for twelve inmates, four showers for approximately ninety-six inmates, and leaking toilets in the shower area.

With respect to the overcrowding complaint, Williams asserted that his cell, which measured approximately 20 × 20 feet, was designed to hold only four persons. In 1988, when he filed his complaint, Williams was required to share the 20 × 20 room with eleven other inmates. The cell also held six bunk beds, a sink, and a toilet.

In addition to the overcrowding, Williams alleged that the plumbing system at Hoke was unsanitary and deficient. Williams asserted that the only toilet in his cell was "constantly coated with urine day and night." He also pointed out that his unit had only four showers for use by approximately ninety-six inmates, and that the water temperature fluctuated between scalding hot and extremely cold. Williams described the plumbing system at Hoke as antiquated and alleged that the inmates were required to walk on floors flooded with sewage because many of the toilets in the facility constantly leaked.

Williams also alleged that the clothing and bed linens given to the inmates were inadequate. He stated that he was not provided with a coat or a blanket. Furthermore, he was provided only one towel a week, and was not permitted to wash or dry the towel during the course of the week.

Finally, Williams described the inadequacies of the insect and vermin control, stating that "[r]oaches infest the storerooms, housing rooms and hallways." He also contended that the walls, ceilings, and floors had small cracks and holes, which permitted insects to infest the walls, posing a health hazard, injurious in nature, at night.

As a result of all of the conditions at Hoke, Williams alleged that he has been subjected to unhealthful and unsafe living conditions, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Not surprisingly, the Prison Officials, named defendants in this suit, view things somewhat differently. The Prison Officials attached two affidavits and inspection reports to their motion to dismiss and for summary judgment.

In response to Williams' allegations regarding overcrowding, it was not disputed that twelve inmates were housed in Williams' cell. In fact, one defendant confirmed that ten to twelve inmates were housed in that section of the prison. The Prison Officials have contended that the allegation is constitutionally insignificant.

In response to Williams' contentions regarding vermin and insect infestation, the Prison Officials have asserted that Hoke has a contract for continuing roach and vermin control and that the level of control has been satisfactory. Defendant Griffin stated that he routinely inspects the prison for roaches and sees "very few."

The Prison Officials contended that "all maintenance needs are met in a reasonable and timely manner," and have submitted inspection reports to support that claim. One such report, prepared by the State Department of Human Resources in June of 1987, revealed no demerits for insects or breeding areas for vermin. However, Hoke received nine demerits for deficiencies in the prison's walls and ceilings, storage, bed linen, and food service utensils and equipment. The report further indicated that the walls and ceilings were not in good repair, the storage facilities were not clean, the bed linen was not in good repair, and the food service utensils and equipment were not easily cleanable, nor kept clean, nor in good repair. In addition, an attachment to the report indicated that "walls and ceilings need repairing" and "some blankets needed replacing."

A second report, prepared in July of 1987 by the Division of Prisons, stated that insects were properly controlled. However, it also showed that the roof of the building in which Williams was housed was "in serious need of repair or replacement" and that the ceiling in the showers needed repair. These same comments were repeated in subsequent reports in September and December of 1987 and again in March and December of 1988.

The question presented to us is whether the district court erred in entering summary judgment against inmate Williams and dismissing his suit, finding that

Williams' allegations regarding unconstitutional prison conditions failed to rise to the level of an Eighth Amendment violation.

At the threshold, the Prison Officials have argued that Williams' failure to respond to the motions to dismiss and for summary judgment, and his failure to submit documentary evidence to substantiate his claim, compelled the district court to resolve all factual disputes in favor of the Prison Officials. Williams, in response, has contended that his verified complaint should be treated as the functional equivalent of an affidavit in response to a motion for summary judgment.

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Kipps v. Ewell*, 538 F.2d 564, 566 (4th Cir.1976); Fed.R.Civ.P. 56(e). However, a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. *Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir.1979) (holding that the factual allegations contained in a verified complaint establish a *prima facie* case under 42 U.S.C. § 1983, so as to preclude summary judgment). *Accord Williams v. Adams*, 935 F.2d 960, 961–62 (8th Cir.1991); *Conaway v. Smith*, 853 F.2d 789, 792–93 (10th Cir.1988); *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir.1987); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1987); *Hooks v. Hooks*, 771 F.2d 935, 945–46 (6th Cir.1985).

In the instant case, Williams' verified complaint, which described the allegedly unconstitutional prison conditions, was based upon his own personal knowledge and set forth specific facts admissible in evidence. Accordingly, it may be considered in opposition to summary judgment.

Next, the Prison Officials contended that Williams' claims were mooted by his transfer from Hoke in January of 1990. Williams, in contravention, has argued that his claim for monetary relief survived the transfer. In his original complaint, Williams sought declaratory and injunctive relief, as well as monetary damages. The transfer, however, has rendered moot Williams' claims for injunctive and declaratory relief, since he is unlikely to return to Hoke and since he, himself, requested the transfer in order to facilitate family visitation rights. *See Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (holding that a prisoner transfer mooted a request for declaratory and injunctive relief, but not a request for money damages); *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir.1988) (a transfer rendered the claim for injunctive relief moot); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Thus, the district court should vacate the summary judgment previously granted to the Prison Officials and dismiss the claims for injunctive and declaratory relief on account of mootness. *See United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). However, since Williams also has sought monetary damages, his entire case is not mooted. Thus, we turn to the merits of Williams' claim.

In reviewing the grant or denial of a motion for summary judgment, an appellate court conducts a *de novo* review, applying the same standard as that applied by the district court under Federal Rule of Civil Procedure 56(c). *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987). All inferences are to be drawn in a light most favorable to the non-movant. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Disposition by summary judgment is appropriate, however, where the record as a whole could not lead a rational trier of fact to find for the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. Prison Conditions

 Williams brought his section 1983 claim asserting that the unsanitary conditions in Hoke, combined with serious overcrowding, violated his Eighth Amendment right to be free from cruel and unusual punishment. A two-pronged showing is necessary to demonstrate a *prima facie* Eighth Amendment violation with respect to prison conditions: (1) a serious deprivation of a basic human need; *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); and (2) deliberate indifference to prison conditions on the part of prison officials. *Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).

The point of disagreement between the parties primarily comes down to whether or not the totality of the conditions of confinement can combine to show an Eighth Amendment violation. The Prison Officials' contention has been that a totality of the circumstances analysis can not be utilized to show an Eighth Amendment violation, arguing that a state's provision of basic necessities ends its obligations under the Eighth Amendment. Williams, on the other hand, has insisted that serious overcrowding when combined with other substandard conditions of confinement, unconstitutionally deprives an inmate of basic human necessities.

That a totality of prison conditions can be combined to show an Eighth Amendment violation is a proposition established in many cases. The Supreme Court in *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (emphasis added) observed that conditions of confinement, "alone *or in combination*" may unconstitutionally deprive inmates of minimum necessities. Other courts have readily adopted the totality of circumstances analysis when examining the constitutionality of prison conditions under the Eighth Amendment. *See, e.g., Tillery v. Owens,* 907 F.2d 418, 426 (3rd Cir.1990) ("in determining whether conditions of confinement violate the Eighth Amendment we must look at the totality of the conditions within the institution"); *Gillespie v. Crawford,* 833 F.2d 47, 50 (5th Cir.1987), *reinstated, in part, en banc,* 858 F.2d 1101 (5th Cir.1988) (numerous deficient prison conditions, considered together, state a claim under § 1983); *Hite v. Leeke,* 564 F.2d 670, 673 (4th Cir.1977) (finding no unconstitutional overcrowding and recognizing that, in this case, overcrowding was not part of a larger problem of unsanitary conditions, giving rise to the "totality of conditions approach").

 However, the recent Supreme Court opinion in *Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), has narrowed somewhat the "totality of conditions" approach. In *Wilson,* the Court noted that:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.... To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Id.* (emphasis in original) (citations omitted). Thus, to state a claim under the Eighth Amendment, Williams had to demonstrate that the overcrowding, in light of overall prison conditions, deprived him of a specific human need.

It is clear that double or triple celling of inmates is not *per se* unconstitutional. *See, e.g., Rhodes,* 452 U.S. at 348, 101 S.Ct. at 2400 (double-celling not *per se* unconstitutional); *Hite v. Leeke,* 564 F.2d 670, 673–74 (temporary triple-celling not *per se* unconstitutional). But, overcrowding accompanied by unsanitary and dangerous condi-

tions can constitute an Eighth Amendment violation, provided an identifiable human need is being deprived. *See Wilson,* 111 S.Ct. at 2327; *Tillery,* 907 F.2d at 423; *Gillespie,* 833 F.2d at 50; *French v. Owens,* 777 F.2d 1250, 1252 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986); *Toussaint v. Yockey,* 722 F.2d 1490, 1492 (9th Cir.1984). Thus, the task remaining for us is to determine whether Williams' verified complaint alleged sufficient prison conditions, which in concert amounted to deprivation of a human necessity, thereby rendering the cumulative effect of the prison conditions unconstitutional.

■ It has been Williams' contention that his verified complaint described unsanitary conditions, which combined with the overcrowding to render his confinement unconstitutional. He has described his cell toilet, shared by twelve inmates, as "constantly coated with urine day and night." He has contended that only four showers were available for ninety-six inmates. He has pointed out that the floors leading to the showers were constantly flooded with sewage as a result of toilets that continually leak. In addition, Williams has asserted deprivation of blankets and coats, and that Hoke was infested with insects and vermin.

In a similar case, the Eighth Circuit recently reversed the district court's decision granting summary judgment, holding that the prisoner's verified complaint stated a claim under the Eighth Amendment in that "[i]t alleged, among other things, that the toilet in the cell did not work, and that it 'continually [ran] over [and] leak[ed] onto the cell floor and the floor stay[ed] filthy with its wast[e].' " *Williams v. Adams,* 935 F.2d 960, 962 (8th Cir.1991). Furthermore, Williams alleged a deprivation of blankets, and the Supreme Court in *Wilson*

expressly noted that the failure to issue blankets combined with low cell temperatures could establish an Eighth Amendment violation. 111 S.Ct. at 2327.

Based upon the allegations of a factual nature contained in Williams' verified complaint, Williams has raised a genuine issue with respect to the prison conditions at Hoke.[1] We find that the verified complaint sufficiently described unsanitary and overcrowded conditions in Hoke, and, as such, withstands summary judgment.

### III. Harm Resulting from Prison Conditions

■ The Prison Officials have contended that, even if we were to find a genuine issue of material fact regarding prison conditions, summary judgment in their favor is nonetheless appropriate because Williams' complaint failed to allege harm resulting from the alleged unsanitary and overcrowded prison conditions. Williams, on the other hand, has argued that harm may be inferred and directs the court's attention to numerous studies demonstrating harm resulting from overcrowded and unsanitary conditions in prisons.

The Prison Official's contention that no harm can be inferred from Williams' allegations can not stand. It seems apparent that psychological harm could be inferred, *Johnson v. Levine,* 588 F.2d 1378, 1380 (4th Cir.1978), as could an increased likelihood of illness and violence. We have recognized that severe overcrowding combined with other deficiencies in prison conditions can cause "a high level of violence and psychological injury to some prisoners." *Id.* Thus, we find that Williams has alleged sufficient facts from which the trier of fact could draw a reasonable inference of harm, if not physical then at least psychological.[2]

---

1. It remains to be determined, from the evidence presented at trial, whether the prison conditions constituted a deprivation of some specific human necessity. We find, however, that Williams' verified complaint creates a genuine issue to be resolved at trial.

2. In addition to the foregoing, Williams has directed our attention to numerous studies as to

harm arising from prison conditions such as those Williams has described. While we recognize that studies and experts' opinions do not establish the constitutional minimum, they may be of assistance with respect to the issue of harm. *See Rhodes,* 452 U.S. at 348 n. 13, 101 S.Ct. at 2400 n. 13. Moreover, in the absence of a showing of actual injury, Williams still would be entitled to nominal damages upon proof of a

## IV. Deliberate Indifference

■ Finally, Williams must demonstrate deliberate indifference on the part of the Prison Officials to state an Eighth Amendment claim based upon prison conditions. *Wilson,* 111 S.Ct. at 2326. To demonstrate deliberate indifference Williams must show that the Prison Officials had knowledge of the conditions that are the subject of the complaint. *Id.* at 2324–26.[3]

The Prison Officials' contention has been that Williams failed to demonstrate the existence of a factual dispute with respect to the deliberate indifference of the Prison Officials. Williams, on the other hand, has insisted that once the Prison Officials were put on notice as to the unsanitary conditions, they were required to make a reasonable response. In addition, Williams has pointed to several published reports by the Governor of North Carolina and the North Carolina Legislature regarding the deplorable condition of North Carolina prisons. He has argued that there has been at least constructive notice to the Prison Officials. Williams also pointed to the grievances that he and other prisoners had filed regarding the complained-of prison conditions,[4] and the failure of the Prison Officials to take action, as demonstrating deliberate indifference.

Finally, and most significantly, Williams has pointed to the Inspection Reports contained as supporting documentation in the Prison Officials' affidavits in support of summary judgment, as showing deliberate indifference. The Reports indicate that the floors, walls, and ceilings continued to need repair. The same comment was repeated on at least four other Inspection Reports spanning a period of at least a year and five months. Moreover, other reports indicated that the roof in Williams' section of the prison was in dire need of repair. Williams' argument has been that the fact that these conditions were never repaired, but rather were allowed to worsen, allegedly providing a breeding ground for insects and vermin, showed deliberate indifference. Taking all of this together, Williams maintains that he has made a sufficient case for deliberate indifference to withstand summary judgment.

The Supreme Court in *Wilson,* while noting that the words "cruel and unusual *punishment*" require a state-of-mind showing of deliberateness, pointed out that "[t]he long duration of a cruel prison condition may make it easier to *establish* knowledge and hence some form of intent...." 111 S.Ct. at 2325 (emphasis in original) (citations omitted).

However, once prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted. *See Shrader v. White,* 761 F.2d 975, 982 (4th Cir.1985). The Inspection Reports indicate that no action was taken to correct the problems with the floors, walls and ceilings, about which Williams complained. In addition, Williams' allegation that he and other inmates made numerous complaints and that no action was taken could go to the issue of deliberate indifference. Moreover, "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (citations omitted). Each of those allegations, considered in a light most favorable to Williams, provides sufficient evidence from which the inference of deliberate indifference could be drawn. Thus, we find that Williams has produced sufficient evidence on each element of his section 1983 prison conditions case to withstand summary judgment.

---

constitutional violation. *Gray v. Spillman,* 925 F.2d 90, 93–94 (4th Cir.1991).

3. The Supreme Court, however, adopted the deliberate indifference requirement set forth in *Wilson* subsequent to the time Williams filed his complaint.

4. The Prison Officials have testified that, after a thorough search, no such complaints could be located. Yet a factual dispute obviously remains to be resolved.

Accordingly, the decision of the district court is

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH.