**Earl ALLEN, Plaintiff and Appellant,**

v.

**CITY OF MINOT, acting By and Through its MAYOR AND CITY COUNCIL, and Investors Real Estate Trust, a North Dakota Business Trust, Defendants and Appellees.**

**Civ. No. 10703.**

Supreme Court of North Dakota.

March 13, 1985.

Dwyer & Klemin, Bismarck, for plaintiff and appellant; argued by Lawrence R. Klemin, Bismarck.

Pringle & Herigstad, Minot, for defendants and appellees; argued by John J. Petrik, Minot.

GIERKE, Justice.

Earl Allen appeals from the judgment of the District Court of Ward County dismissing with prejudice his declaratory judgment action. We affirm.

Allen owns Oak Park Center, a neighborhood shopping center in Minot. Investors Real Estate Trust (IRET) owns Arrowhead Shopping Center, located five blocks away. In 1981, IRET applied to the Minot City Council for Municipal Industrial Development Act (MIDA) bonds to renovate Arrowhead. Allen appeared at a public hearing and presented testimony in opposition to the bond issue. The Minot City Council subsequently authorized $900,000 in MIDA bonds for the Arrowhead renovation project.

Allen thereafter commenced a declaratory judgment action, pursuant to Chapter 32–23, N.D.C.C.,[1] seeking invalidation of the bonds. Allen contends that the Minot City Council, in authorizing the bonds, failed to comply with the statutory requirements contained in Section 40–57–04.1, N.D.C.C.

The dispositive issue on appeal is whether a competitor who has opposed the issuance of MIDA bonds may have the bonds invalidated by a court. We conclude that he cannot.

Section 40–57–12, N.D.C.C., provides:

"*40–57–12. Validity of bonds.* Revenue bonds bearing the signatures of the appropriate officers who are in office on the date of the signing thereof shall be

---

1. Although the parties have not raised the issue, we feel compelled to express our reservations concerning the applicability of the Declaratory Judgment Act, Ch. 32–23, N.D.C.C., under the circumstances presented in this case.

A declaratory judgment, by its very nature, is intended to clarify the rights of parties *before* those rights are violated. Once rights are violated, declaratory relief is inappropriate. We stated in *West Fargo Public School District No. 6 v. West Fargo Education Association*, 259 N.W.2d 612, 617 (N.D.1977), that the Declaratory Judgment Act is intended "to provide a method whereby parties to a justiciable controversy may have it determined by a court *in advance of any invasion of right or breach of obligation*, ..." [Emphasis added.] *See also City of Minot v. Central Avenue News, Inc.*, 325 N.W.2d 243, 244 (N.D.1982); *Eck v. City of Bismarck*, 283 N.W.2d 193, 201 (N.D.1979); *Park District City of Fargo v. City of Fargo*, 129 N.W.2d 828, 831 (N.D.1964).

Cases from other jurisdictions which have adopted the Uniform Declaratory Judgment Act, from which Chapter 32–23, N.D.C.C., was adopted, support our conclusion. For example, in *Sapp v. ABC Credit & Investment Co.*, 243 Ga. 151, 159, 253 S.E.2d 82, 87 (1979), the Supreme Court of Georgia stated:

"'The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated. As many times pointed out by this court, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light before he steps rather than after he has stepped in a hole.' *Loyd v. City of Irwinton*, 142 Ga.App. 626, 236 S.E.2d 889 (1977). Here, as in *Mendel v. Pinkard*, 217 Ga. 562, 123 S.E.2d 770 (1962), appellant has shown no facts which show that a declaratory judgment is necessary to relieve her of the risk of taking some future undirected action incident to her rights which might jeopardize her interest. The appellant had already acted when her petition was filed (as had appellee). Consequently, summary judgment was correctly granted against her on her prayers for declaratory relief."

*See also George v. Department of Natural Resources*, 250 Ga. 491, 299 S.E.2d 556 (1983); *Brogdon v. State Board of Veterinary Medicine*, 244 Ga. 780, 262 S.E.2d 56 (1979); *Farmers Union Warehouse v. Bird*, 224 Ga. 842, 165 S.E.2d 148 (1968); *Adams v. Atlantic City*, 26 N.J.Misc. 259, 59 A.2d 825 (Sup.Ct.1948).

Allen is not asking that his prospective rights under Section 40–57–04.1, N.D.C.C., be determined; rather, he is seeking redress for a violation of his rights which, he alleges, has already occurred. Under these circumstances, declaratory relief is inappropriate.

Because the parties have failed to raise this issue, and because it is not *per se* jurisdictional, we will not base our decision on these grounds but will proceed to the merits.

valid and binding obligations notwithstanding that before the delivery thereof and payment therefor, any or all of the persons whose signatures appear thereon shall have ceased to be officers of the municipality issuing the same. The validity of said bonds shall not be dependent on nor be affected by the validity or regularity of any proceedings relating to the acquisition, purchase, construction, reconstruction, improvement, betterment, or extension of the project for which said bonds are issued. *The ordinance or resolution authorizing said bonds may provide that the bonds shall contain a recital that they are issued pursuant to this chapter, and such recital shall be conclusive evidence of their validity and of the regularity of their issuance.*" [Emphasis added.]

The bonds issued in this case contain the requisite recital that they are issued pursuant to the Municipal Industrial Development Act. Pursuant to the terms of the statute, the recital is conclusive evidence of the validity and regularity of issuance of the bonds.

■ Allen argues that the "validity" and "regularity" discussed in the last sentence of Section 40–57–12 refer only to technical defects, and do not preclude a challenge to the bonds based upon the city council's alleged failure to comply with the requirements of Section 40–57–04.1, N.D.C.C. We believe, however, that the Legislature intended to preclude any challenge to the validity of the bonds. The statute does not contain language limiting its application to technical defects, but specifically states that the recital shall be conclusive evidence of the validity of the bonds.

---

2. We recognize that in this case the bonds were purchased by a bank which was well aware of the pending litigation over issuance of the bonds. That fact does not alter our conclusion that the intended purpose of Section 40–57–12,

The Legislature obviously intended to protect bondholders from the disruptive effect of a subsequent invalidation of the bonds. The bondholders, not having been parties to the proceedings before the city council, would nevertheless be those most affected by invalidation of the bonds. Having relied upon the recital in the bonds that they are issued pursuant to the Act and therefore enjoy tax-free status, bondholders should not be subjected to later alteration of their rights and obligations due to an irregularity in the issuance of the bonds.[2]

The only relief sought by Allen in his ·declaratory judgment action was invalidation of the bonds. We hold that Allen is not entitled to such relief. The judgment of the district court dismissing Allen's declaratory judgment action is affirmed.

ERICKSTAD, C.J., and PEDERSON, Surrogate Judge, concur.

VANDE WALLE, J., concurs in the result.

Surrogate Judge PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.

---

N.D.C.C., is to prohibit any legal challenge to the validity of the bonds.