Sidney HERTZ, Appellant,

v.

Michael CLEARY, Demetry Kenezuroff, Harry Morgan, Bob Owen, Thomas Walters, and Ernest Morgan; Robert Smith, Commissioner, Department of Health and Social Services; Roger Endell, Director, Division of Adult Corrections; Vernon Caulkins, Assistant Director, Division of Adult Corrections, Department of Health and Social Services; Reverend William Lyons, Beverly Dunham, Frederick Pettyjohn, Al Widmark, and Conrad Miller, all of the Alaska Parole Board; Samuel Trivette, Executive Director of the Alaska Board of Parole, and their subordinates, employees and agents, Appellees.

No. S–4261.

Supreme Court of Alaska.

May 29, 1992.

Sidney R. Hertz, pro per.

Michael J. Stark, Asst. Atty. Gen., Charles E. Cole, Atty. Gen., Juneau, Philip R. Volland, Rice, Volland and Gleason, Anchorage, and Vance A. Sanders, Alaska Legal Services, Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The central contention in this appeal is that the superior court erred in failing to grant Sidney Hertz's motion to intervene as a pro se plaintiff in the *Cleary* class action litigation challenging prison conditions.

### I. FACTS AND PROCEEDINGS.

The *Cleary* litigation began in 1981 as a Civil Rule 23 class action challenging the conditions of Alaska's correctional facilities. The class consisted of all inmates who were or would be incarcerated in Alaska prisons (denominated subclasses A and B) and Alaska inmates serving sentences in Federal facilities (denominated subclass C). In January 1983, the superior court approved the parties' partial settlement agreement, which pertained to subclasses A and B. A separate settlement agreement concerning subclass C was entered in February 1983. The class C settlement agreement provided for the return of Alaska prisoners upon their request by Decem-

**440**

ber 31, 1987, contingent on the construction of a new correctional facility. The new facility, Spring Creek Correctional Center, was subsequently built.

Numerous issues were reserved for trial, which was held in 1984. Although the superior court found that facilities were not currently unconstitutionally overcrowded, the court set "presumptive population caps," required the Department of Corrections (Department) to prepare a study on population of the prison system, and indicated its intent to hold a hearing on the prison overcrowding issue and various other issues. In 1985, the superior court entered its final order. The Department appealed and the class cross-appealed the superior court's order. The appeal was ultimately stayed to allow settlement negotiations.

In December 1987, the superior court appointed a standing compliance monitor to oversee compliance with the partial settlement agreement. Various issues concerning compliance with and interpretation of the partial settlement agreement were litigated in the superior court through 1989, when efforts at settlement were renewed. On August 1, 1990, the negotiation efforts of the parties and the standing compliance monitor culminated in the proposed Final Settlement Agreement (FSA).

The proposed FSA and an analysis of the settlement by the attorney representing the class were distributed to all class members in the first week of August. The comment period was scheduled to close on September 4, but comments were accepted until September 17. The proposed FSA was amended to address comments from class members, including comments from Sidney Hertz. The amended FSA, as well as all of the comments of class members, were presented to a special master who concluded that the notification and com-

ment procedures were both reasonable and adequate. In its approval of the FSA the superior court adopted the special master's findings and held that the provisions of the FSA were reasonable and in the best interests of the class.

Prior to the comment period, Sidney Hertz moved to intervene in the *Cleary* litigation as a pro se plaintiff. The class members and the Department (collectively referred to as Cleary) opposed Hertz's intervention as untimely because at the time of Hertz's motion, the settlement negotiations were substantially completed. Cleary also argued that Hertz was already a class member whose interests were adequately represented.

Hertz also filed a motion to extend the comment period to allow him to submit his proposed changes to the FSA. Before the superior court ruled on Hertz's motion to extend the time for comment, Hertz filed his proposed changes to the FSA. Thus, the court found that his motion for an extension was moot. However, the superior court did not rule on Hertz's motion to intervene and treated his motions and proposed changes as timely comments on the proposed FSA. Hertz now appeals, alleging that the superior court erred by failing to allow him to intervene. Hertz also raises several issues in his points on appeal relating to the superior court's failure to find constitutional violations in regard to the subjects he discussed in his proposed changes to the FSA.

DISCUSSION

II. DID THE SUPERIOR COURT ABUSE ITS DISCRETION IN FAILING TO ALLOW HERTZ TO INTERVENE AS A PRO SE PLAINTIFF? [1]

Hertz argues that the superior court erred in denying his motion to intervene.[2] He argues that the court should

---

**1.** We review the superior court's denial of Hertz's Alaska Civil Rule 24 motion under an abuse of discretion standard. *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984).

**2.** The superior court did not rule on Hertz's motion to intervene. The approval of the FSA was effectively a denial of the motion to intervene. *See* Alaska R.Civ.P. 77(k)(4). Therefore,

the denial of the motion to intervene as of right is appealable as a final order. *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 504 (3rd Cir.1976), *cert. denied* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *In re Benny*, 791 F.2d 712, 720 (9th Cir.1986). An order denying permissive intervention is traditionally only appealable if the denial was an abuse of discre-

have allowed his intervention on behalf of the inmates of Spring Creek Correctional Facility because he alleges that Spring Creek inmates are not members of any class included in the settlement agreement.

Cleary correctly argues that "[i]ntervention may only be granted if the applicant establishes a right to intervene under Alaska Civil Rule 24(a) or grounds for permissive intervention under Alaska Civ.R. 24(b)." In *State v. Weidner,* we set out a four part test to determine when the court is required to grant intervention as a matter of right under Civil Rule 24(a):

> (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired as a consequence of the action; and (4) it must be shown that the interest is not adequately represented by an existing party.

684 P.2d 103, 113 (Alaska 1984) (citation omitted).

■ In order to satisfy the standard for permissive intervention under Civil Rule 24(b), the application must be timely and the intervention must not impair the rights of the original parties. Alaska R.Civ.P. 24(b). Cleary asserts that Hertz did not establish grounds that would justify allowing intervention.

### (1) *Was Hertz's application to intervene timely?*

■ Hertz did not move to intervene until the *Cleary* settlement negotiations were substantially concluded. Given this circumstance we hold it was not an abuse of discretion on the superior court's part to hold that the motion to intervene was untimely. Further, intervention at such a late stage in the *Cleary* settlement process would have impaired the rights of other class members. Cleary correctly points out that the approximately 2,500 class members are constantly in flux. Thus, allowing Hertz to intervene would have destroyed the efficiency of a class action and would require the reconsideration of issues that have been resolved over nine years of litigation and settlements.

### (2) *Did Hertz establish that his interests were impaired by the FSA and that his interests were not represented adequately by the class?*

Hertz based his motion to intervene in part upon assertions that the inmates in Spring Creek are not included in the plaintiff class of the FSA and their interests are not represented by present class members. Cleary argues that the Spring Creek inmates are included in the plaintiff class, citing as support FSA § I.D. That section of the FSA provides that the agreement is binding upon all inmates "who are or will in the future be incarcerated in correctional facilities owned or operated by the state."

Hertz also argues that the plaintiffs' attorney failed to keep him informed and "showed little concern or interest in prisoners' rights since Attorney Volland spend [sic] *only* 55 days in negotiations on this action between 1987–1990." While Hertz's assertion that Volland spent 55 days is correct, his conclusion is without factual support in the record. The superior court found that,

> the representation of the class by Mr. Volland has been excellent. It has been competent. It has been professional and at all times it has been pursued with concerns both that the class know what was going on, understand what was going on, and have repeated and ample opportunity to participate in what was going on by feedback first to him, prior to negotiations, during the negotiations and to the compliance monitors and the court during this period in which the final settlement agreement has been under consideration by members of the class.

The court's conclusion is supported by the four memoranda, detailing the progress of

tion. However, courts and commentators have found it anomalous to determine jurisdiction over an appeal by examining the very issue raised in the merits of the appeal. *Id.* Thus the

*Benny* court observes that the "emerging trend is to treat *all* denials of intervention as final appealable orders." *Id.* (Emphasis in the original).

the litigation and settlement negotiations, sent to class members by Attorney Volland since November 1987. Volland also asserts that he attempted to respond to all correspondence from class members, and that he actually responded to Hertz's letter of January 1990.

Hertz further asserts that he should be allowed to intervene because Volland refused to bring an action for violations of the FSA. Cleary correctly argues that Hertz's dissatisfaction with the grievance procedure does not entitle Hertz to intervene. Cleary further properly argues that inmates are required to file grievances with the standing compliance monitor before bringing an action in court and that an action could not have been brought because Hertz never filed a grievance with the monitor.

■ Hertz has failed to demonstrate that his interests have not been represented adequately by the class members. In *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984), we explained that inadequacy of representation by the existing party requires a showing of "collusion, adversity of interest, possible nonfeasance, or incompetence.... Even with a cautious approach toward the denial of intervention, where there is virtual identity of existing and would-be parties' interests, representation is adequate." (Citations omitted). Here, Hertz has failed to show any of the elements necessary to demonstrate inadequacy of representation. Further, he has not demonstrated that his interests differ from those of the plaintiff class.[3] Thus,

we conclude that the superior court did not err in denying Hertz's motion to intervene.[4]

### III. DID THE SUPERIOR COURT ERR IN FAILING TO MAKE VARIOUS RULINGS REQUESTED BY HERTZ?

Hertz argues that the superior court erred in failing to rule that (1) the Department must segregate inmates with AIDS from the general prison population; (2) the Department must distinguish between inmates in punitive and administrative segregation in House I of Spring Creek Correctional Center; (3) Spring Creek Correctional Center's photocopying procedure is unconstitutional; (4) Section VII C. 11 of the FSA violates due process because it allows the disciplinary committee to consider evidence outside the record; (5) the Department acted arbitrarily and capriciously in denying computers to Spring Creek inmates; and (6) the FSA does not clearly define special occasions during which inmates can receive Alaska Native foods.

(1) *Assertion that the Department must segregate inmates with AIDS from the general prison population.*

■ In his Supplemental Proposal for Clarification and Objection to Final Settlement Agreement and Order (Supplemental Proposal), Hertz raised his objection to prisoners with AIDS working in the kitchen and asserts that all prisoners with AIDS must be segregated from the general prison population. The record shows that the subject of the segregation of prisoners in-

---

**3.** Courts have disallowed intervention by pro se plaintiffs when their interests are represented adequately by the existing class representative. *See McNeil v. Guthrie*, 945 F.2d 1163, 1167 (10th Cir.1991). Further, as a pro se plaintiff, Hertz may not properly represent a class. "A basic requirement of all class actions is that the named plaintiff can fairly and adequately represent the class." *Shaffery v. Winters*, 72 F.R.D. 191, 193 (S.D.N.Y.1976) (citing Fed.R.Civ.P. 23(a)(4)). In disallowing a pro se litigant's representation of a class of inmates in a New Jersey state prison, the *Shaffery* court stated that "[o]ne of the most important considerations in this regard goes to the qualifications and expertise of plaintiff's counsel ... it would be improper to permit Shaffery, a pro se litigant who is not an attorney and who labors under

the restrictions of incarceration, to litigate as a class action a question as significant as that raised by the complaint." 72 F.R.D. at 193.

**4.** Cleary asserts that any error in not allowing Hertz to intervene was harmless because Hertz's comments, proposals and objections filed with the superior court were considered in the negotiations and the FSA approval process. *See Alaska Christian Bible Inst. v. State*, 772 P.2d 1079, 1081 (Alaska 1989) (denial of intervention held harmless error where the intervenor was allowed to participate as an amicus curiae). As in *Alaska Christian*, here there was no prejudice where Hertz's comments were considered by the superior court and the parties.

fected with AIDS was never at issue in the *Cleary* litigation or in the FSA. This issue is raised for the first time in this proceeding in this appeal. Furthermore, Hertz devotes only two paragraphs to this claim. In this regard we have held "[w]here a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Wood v. Collins,* 812 P.2d 951, 957 n. 8 (Alaska 1991) (citations omitted).

Given the above we hold that Hertz has not shown that the superior court's failure to rule on this issue renders invalid the superior court's approval of the FSA.[5]

(2) *The Department must distinguish between inmates in punitive and administrative segregation in House I of Spring Creek Correctional Center.*

■ Hertz argues that the department does not distinguish between inmates in punitive and administrative segregation in House I of Spring Creek. Cleary contends that Hertz's arguments "[do] not affect the legitimacy of the FSA." According to Cleary, the FSA provides for access to all programs for all prisoners including those in Spring Creek House I and Hertz's claims concerning the Department's implementation of the FSA should be addressed through the administrative grievance procedure before the court will hear the grievance. The FSA, Section IX.B.2 provides: "An inmate must first exhaust the administrative grievance procedure set out in Section VII.E prior to filing an action alleging noncompliance with this agreement."

Given the above we conclude that Hertz has failed to exhaust his administrative remedies concerning this issue and thus we do not reach the merits of Hertz's contention.

(3) *Spring Creek Correctional Center's photocopying procedure is unconstitutional.*

Hertz argues that the Department must provide prisoners with five free pieces of mail per week, in addition to free photocopying services in order to allow "meaningful access to the courts." This argument was raised earlier in Hertz's Supplemental Proposal.

As Cleary correctly notes, the FSA already provides for the five pieces of mail for indigent inmates. FSA § V.D.7. The issue of photocopying was not raised in regard to the FSA and is not properly raised as a challenge to the FSA. However, the FSA does provide for access to a typewriter, paper and carbon paper or a typing service for the preparation of legal documents. FSA § V.G.12.

Hertz also argues that the Spring Creek photocopying procedure is unconstitutional because the confidentiality of documents is not preserved and because advance copies of the prisoners' documents may be sent to the Attorney General's office or copies may be lost. This issue was briefly raised in the Supplemental Proposal.

As to this issue, we again conclude that Hertz has failed to exhaust his available administrative remedies and thus the issue will not be addressed on its merits in this appeal.

(4) *Section VII.C.11 of the FSA violates due process because it allows the disciplinary committee to consider evidence outside the record.*

■ Hertz argues that § VII.C.11 of the FSA violates due process because it allows the prison disciplinary committee to consider evidence outside the record. That section provides that:

11. The disciplinary hearing shall occur in two phases, known as the adjudicative phase, which must be directed at determining whether the inmate committed the alleged infraction, and the dispositive phase, directed toward what sanction is to be imposed. The adjudicative and dispositive phases of the hearing shall pro-

---

5. This holding does not preclude Hertz from properly raising this issue with the Department of Corrections.

ceed in accordance with 22 AAC 05.420.[6]

However, Hertz's challenge is misinformed. Section VII.C.13 of the FSA states "[t]he determination of an inmate's guilt must be based only on evidence presented at the hearing."

Additionally, Cleary sets forth two other persuasive arguments that Hertz's challenge of this provision of the FSA should not be reached by the court. First, the issue was raised for the first time on appeal. *Williams v. Alyeska Pipeline Serv. Co.,* 650 P.2d 343, 351 (Alaska 1982). Second, Cleary contends that Hertz's argument really is a challenge to 22 AAC 05.-420, rather than the FSA and should not be addressed in the context of a challenge to the FSA.[7]

(5) *The Department acted arbitrarily and capriciously in denying computers to Spring Creek inmates.*

 Hertz argues that the Department's denial of computers to Spring Creek inmates is arbitrary and capricious. He asserts that the computers are necessary tools for rehabilitation and for access to the courts. Cleary points out that once again the issue was not raised by the parties to the FSA and was not raised by Hertz before the trial court. We decline to consider the issue of computers because it was raised for the first time on appeal. *Williams,* 650 P.2d at 351.

Furthermore, Cleary accurately notes that the right to rehabilitative programs was addressed by Section VI of the FSA and that the failure to provide for access to computers does not impair the superior court's findings that the FSA was reasonable and fair and in the best interests of class members.

(6) *The FSA does not clearly define special occasions during which inmates can receive Alaska Native foods.*

 Hertz argues that administrators at Spring Creek have limited "special occa-

sions" for receipt of native foods to potlatches and that, since the FSA has been in effect, the administrators have disallowed Alaska Native foods from the villages during Christmas. He challenges Section VI.I.1 of the FSA which provides:

1. The Department shall make provision for special religious, medical and vegetarian diets. Alaska Native foods will be permitted on special occasions such as potlatches and other times as resources and appropriate regulatory agencies permit.

Cleary correctly argues that Hertz cannot raise this issue for the first time on appeal. *Williams,* 650 P.2d at 351. Additionally, this grievance involves the interpretation and application of the FSA by the administrators at Spring Creek and therefore may be raised only after the exhaustion of administrative remedies under Section VII.E. of the FSA.

CONCLUSION

The superior court's denial of Hertz's request to intervene is AFFIRMED. The superior court did not err in holding that the provisions of the FSA were reasonable, fair and in the best interests of the class despite Hertz's numerous objections. None of Hertz's objections to the FSA are meritorious and thus do not invalidate the superior court's approval of the FSA.

AFFIRMED.

MOORE, J., not participating.

---

6. 22 AAC 05.420 provides that the tape recorder need not be operating during deliberations of the disciplinary committee.

7. Hertz raised and this court rejected a challenge to 22 AAC 05.420 in *Hertz v. Pugh,* MO & J No. 585, S–4286.