**Edward ENNIS, Petitioner
and Appellant,**

v.

**Timothy SCHUETZLE, Warden of the
North Dakota State Penitentiary,
Respondent and Appellee.**

Civ. No. 920027.

Supreme Court of North Dakota.

June 25, 1992.

Rehearing Denied July 6, 1992.

Edward Ennis, pro se.

William G. Peterson (argued), Atty. General's Office, Bismarck, for respondent and appellee.

Sara Beth Gullickson, Atty. General's Office, Bismarck, for respondent and appellee. No appearance.

MESCHKE, Justice.

Edward Ennis, a prisoner at the state penitentiary, appeals orders denying his motion for appointed counsel at public expense, and his petition for a writ of certiorari. The trial court denied appointment of counsel because certiorari is a civil matter. The trial court ruled that the warden had not exceeded his powers by revoking Ennis's work assignment and preferred housing for infractions of rules. We affirm.

According to the written report of the Adjustment Committee at the prison, Ennis attempted on October 21, 1991, to give a sealed box marked "Inter–Departmental Mail, To: Supreme Court" to Property Officer Judy Berg for inter-departmental routing. When asked to identify the contents, Ennis said that the box contained legal material, and that "[i]t's mine." Berg told Ennis that inter-departmental transfer was not for personal use, and that he would have to mail the box through the post office. Berg refused Ennis's demand for a written statement that she would not accept the box.

The next day, Ennis met with Officer Berg, Director of Training and Accreditation Don Redmann, and Director of Classification and Education Dan Wrolstad about the incident. Meanwhile, the sealed box had been re-labeled to read "Inter–Department Mail, To: Supreme Court *Law Library*." Ennis admitted that the package was not "his", but rather contained books borrowed for the prison library from the Supreme Court law library. Ennis said that, in his position as inmate library clerk, he was trying to use inter-departmental transfer for library purposes. When questioned about his statement to Berg incorrectly identifying the box as "his," Ennis became belligerent and refused to cooperate.

After an investigation by Berg's supervisor, Captain Linda Leuwer, Berg filed a report citing Ennis for infractions of prison rules by "False testimony presented to staff," and by "Conduct which disrupts or interferes with the security of orderly running of the institution." Following disciplinary procedures outlined in the Inmate Handbook, an Adjustment Committee held a hearing on the charges. Basing its decision on Berg's report, Leuwer's investigation, testimony, admissions, and confidential information, the Committee found that Ennis had committed the charged infractions. The Committee recommended to the warden that Ennis lose his preferred housing status and his privileged position as inmate library clerk.

The warden imposed the recommended sanctions. Ennis attempted an appeal to the Director of Institutions. She refused to act because the Inmate Handbook made "all sanctions effective upon review by the Warden" and limited "appeals to the Department Director to loss of statutory good time."

Filing as an indigent without paying a filing fee, Ennis petitioned for a writ of certiorari to review the sanctions. Ennis moved for an evidentiary hearing and for assistance of appointed counsel at public expense. The trial court denied Ennis's motion for appointed counsel "because this Court has no authority to appoint counsel in what is essentially a civil matter, albeit arising out of [Ennis's] incarceration."

In a response for the warden, the State submitted the written record of the prison proceeding and urged that the trial court could not re-weigh the evidence nor review the merits of the decision by the Adjustment Committee and the warden. The State opposed an evidentiary hearing, and Ennis filed affidavits quibbling with the State's responsive material. *See* NDRCivP 12(c). Without a trial, the trial court concluded that Ennis's petition "seeks to have

the action of the [Adjustment Committee] and the decisions reviewed, as opposed to the jurisdiction of the [Adjustment] Committee," and that the procedures employed by the warden were "appropriate and pursuant to law." The court summarily denied certiorari. Ennis appeals.

■ Ennis asserts that the trial court erred in denying his request for a court-appointed counsel, arguing that the court failed to recognize its own "inherent power to appoint lawyers to represent indigents." Generally, an indigent criminal defendant has the right to appointed counsel at public expense in all felony cases and in misdemeanor cases if the potential punishment includes imprisonment. NDRCrimP 44. We have also recognized the right to appointed counsel in a contempt proceeding when unconditional imprisonment may be imposed. *State, County of Cass v. Gruchalla,* 467 N.W.2d 451 (N.D.1991). But, in *State v. Mees,* 272 N.W.2d 284 (N.D.1978), we held that an indigent convict is not entitled to court-appointed counsel on appeal when his sentence did not include imprisonment. *Compare Piper v. Popp,* 167 Wis.2d 633, 482 N.W.2d 353 (1992) (Due process does not require appointment of counsel to defend an indigent prisoner in a civil tort action when the prisoner is allowed to plead and appear personally); *Thompson v. King,* 393 N.W.2d 733, 736 (N.D.1986) ("Due process is satisfied when [an indigent] convict in a proceeding for termination of parental rights and adoption is allowed to appear through counsel and by deposition," when personal participation was not allowed). Unless a liberty interest or a fundamental right may be adversely affected, a prisoner has no inherent right to counsel at public expense for civil litigation if he is allowed to plead and appear personally.

Certiorari is a special civil proceeding. NDCC 32–32–01 and 32–32–03.[1] The pur-

---

**1.** NDCC 32–32–01 says:
  *Definition.*—"Special proceedings" within the meaning of this chapter shall include the writs of certiorari, mandamus, and prohibition.
  NDCC 32–32–03 says:

  *"Judgment in special proceeding" defined—Motion and order.*—A judgment in a special proceeding is the final determination of the rights of the parties therein. The definitions of a motion and an order in a civil action are

pose of judicial review by certiorari is "to determine whether the ... officer has pursued regularly the authority of such ... officer." NDCC 32–33–09. This petition does not deal with the deprivation of a liberty interest or a basic right, but only with changes in a prisoner's job and housing privileges. Ennis has pleaded and appeared personally. Therefore, we conclude that the trial court properly denied Ennis's motion for appointed counsel at public expense.

■ Ennis argues that, since he proceeded without assistance of counsel, he was entitled to, but denied, liberal construction of his petition by the trial court. Generally, this court holds that procedural "rules cannot be applied differently merely because a party [is] not learned in the law." *McWethy v. McWethy*, 366 N.W.2d 796, 798 (N.D.1985). Still, "[i]t is settled law that the allegations of ... a [prisoner's] complaint, however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers...." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). (Citations and quotation marks omitted). *Compare Denton v. Hernandez*, — U.S. ——, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (Because an indigent prisoner lacks "economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," federal statute permits a court to dismiss an in forma pauperis complaint if satisfied that the action is frivolous, and without being bound, "as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations.") A prisoner's complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the prisoner can prove no facts that would entitle him to relief. *Hughes v. Rowe*, 449 U.S. at 10, 101 S.Ct. at 176. Generally, allegations of a prisoner's complaint are taken as true for purposes of a motion to dismiss.

This settled view for liberally construing a prisoner's pro se civil complaint is simply a specific expression of our procedural rule that "[a]ll pleadings shall be so construed as to do substantial justice." NDRCivP 8(f). *See also* Explanatory Note to NDRCivP 8 ("[A] complaint is sufficient if plaintiff would be entitled to relief under any state of facts that could be proven in support of the claim alleged"). We conclude that the trial court fairly construed Ennis's petition, but summarily dismissed it under NDRCivP 12(c) and 56 based upon the documentary evidence and affidavits submitted.

Acknowledging that judicial review by certiorari is restricted, Ennis nonetheless argues that certiorari is the only relief available to him, and urges us to consider his arguments in that light. NDCC 32–33–09.[2] Ennis believes that the warden exceeded his authority in denying him certain procedures before imposing discipline, and that the discipline was retaliatory.

■ Ennis mainly argues that he was denied due process. Before the Adjustment Committee hearing, Ennis gave the warden a list of requests to employ certain procedures suitable to a full-blown judicial trial. Ennis sought to have his attorney present at the hearing, to call and to cross-examine listed witnesses, and to see all written investigation reports before the hearing, and he demanded a hearing panel of three (rather than the prescribed two) "unbiased and impartial members." Because these requested procedures were not employed, Ennis believes that he was denied due process. We disagree.

■ A prisoner has diminished constitutional protections. *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Still, a prisoner continues to "enjoy substantial religious free-

---

applicable to similar acts in a special proceeding.

**2.** NDCC 32–33–09 says:
*Extent of review.*—Except as otherwise provided by law, the review upon a writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has pursued regularly the authority of such court, tribunal, board, or officer.

dom," the "right of access to the courts," and protection from "invidious discrimination based on race." *Id.* at 556, 94 S.Ct. at 2974. Subject to conditions implicit in imprisonment, a prisoner may not be deprived of life, liberty, or property without due process of law. *Id.* However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.*

The only deprivations suffered by Ennis were withdrawal of favored treatment in his housing and work assignments—losses of privileges, not rights. Upon entering the prison, Ennis received a copy of the Inmate Handbook containing prison rules and regulations. Inmate Handbook (June 1990). Thus, he was notified that a prisoner has no "implied right or expectation to be housed in any particular unit or to be assigned to any particular program or work assignment regardless of his or her custody classification." *Id.* at 3.[3] As we said in *Jensen v. Powers*, 472 N.W.2d 223, 225 (N.D.1991), "[d]eprivation of a prisoner's privileges does not infringe on any recognized right of a prison inmate." Ennis lost only privileges, not rights.

█ Although a prisoner has no constitutional right to a hearing before withdrawal of a privilege, the state may recognize such a right. *Kelley v. Powers*, 477 N.W.2d 586 (N.D.1991). If the state recognizes procedural rights before withdrawing a privilege, the Fourteenth Amendment assures the prisoner that those minimum procedures cannot be arbitrarily abrogated. *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. *See also* The Civil Rights of Institutionalized Persons Act, May 23, 1980, P.L. 96–247, 94 Stat. 349, 42 U.S.C.S. § 1997 et seq.; Standards for Inmate Grievance Procedures, 28 CFR Ch. 1, Part 40 (7–1–91

Edition). In North Dakota, the prison rules call for a very limited hearing when officials withdraw a privilege as punishment for an infraction.

The warden is statutorily authorized to regulate the conduct of prisoners by making rules and regulations:

> The warden, subject to the approval of the director of the division of adult services, shall make rules and regulations not in conflict with the laws of this state and shall prescribe penalties for the violation thereof:
>
> \* \* \* \* \* \*
>
> 3. For the conduct of prisoners committed to the state penitentiary.

NDCC 12–47–12. *See also* NDCC ch. 12–54.1. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) ("[P]rison regulations ... are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights"). The rules at this prison set the procedure for disciplining an inmate for an infraction.

For an inmate charged with a Category 2 infraction, as Ennis was, the procedures in the rules include written notice of the infraction; a fact-finding hearing before a designated Adjustment Committee of prison staff; notice of the time and place of the hearing at least 24 hours in advance; representation by a full-time staff member before the committee (if requested); presence at the hearing (except during deliberations); and an opportunity to offer evidence. Inmate Handbook, p. 18–20. "The inmate may be allowed to call material witnesses and present documentary evidence in the inmate's defense if permitting the inmate to do so will not jeopardize security, order, rehabilitation, or other institutional objectives." *Id.* at 19. Ennis

---

**3.** The text of the Inmate Handbook says:

CLASSIFICATION

Housing, programs, and work assignments of all inmates of the North Dakota State Penitentiary are made at the discretion of the administration.

No inmate has an implied right or expectation to be housed in any particular unit or to be assigned to any particular program or work

assignment regardless of his or her custody classification.

All inmates are subject to transfer from any unit, program and/or work assignment to another, either more or less restrictive, at any time at the discretion of the administration or, in those circumstances where law or regulation provides, as the results of a disciplinary or Classification Committee decision.

was not permitted to call certain witnesses, but the hearing report explained that these witnesses had been interviewed beforehand, and that their comments were considered during the Committee's deliberations. The scheduled procedures for disciplining a prisoner by revoking privileges for infractions were carried out.

The trial court concluded that the disciplinary "procedures put in place by the warden are appropriate and pursuant to law." We agree. The Adjustment Committee hearing and report satisfied the very limited process due in this context. Even when liberally construed, Ennis's claims of procedural irregularities were insufficient to require a trial.

Prison proceedings "to ascertain and sanction misconduct ... play a major role in furthering the institutional goal of modifying the behavior and value systems of prison inmates...." *Wolff*, 418 U.S. at 562–63, 94 S.Ct. at 2978. Yet, it is important to note that this decision deals only with a prisoner's loss of favored status, not a deprivation of a liberty interest or of a fundamental right. *Compare Hudson v. McMillian*, — U.S. —, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (Use of excessive physical force against an inmate is an Eighth Amendment violation even if the inmate suffers no serious injury). We have said before that "[c]ontrol of privileges ... is well within the warden's statutory authority to regulate the conduct of prisoners." *Jensen*, 472 N.W.2d at 225. In another case involving a more serious penalty, like loss of "good time," denial of meaningful access to the courts, or deprivation of some other basic right, a judicial hearing and review would be in order.

■ Ennis claims that the warden exceeded his authority by charging him "with rule violations as [a] retaliatory act for exercise of constitutional rights in civil rights action[s]" and "as [a] retaliatory act for filing letters of complaint of officer Berg's (and other prison officials) illegal conduct." Ennis is a "primary plaintiff" in two federal court actions challenging certain prison procedures that, he argues, adversely affect his right of access to the courts through harassment of inmate law-library clerks. Because Berg, Wrolstad, and the warden are respondents in those actions, Ennis alleges that his loss of favored treatment is retaliatory.

The prison's regulations declare that its employees shall "[i]mpose no reprisal or penalty on any inmate because of the inmate's decision to seek judicial relief." Inmate Handbook, p. 23. *See also* Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997d: "No person reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation in any manner for so reporting."

Perhaps Ennis's claim of retaliation represents "the impact of disciplinary confrontations and the resulting escalation of personal antagonism ..." in prison administration that the United States Supreme Court has been concerned about. *Wolff*, 418 U.S. at 562, 94 S.Ct. at 2978. Nonetheless, Ennis's petition does not explain how the loss of his privileged position as a law-library clerk compromises his access to the courts. Ennis does not show that he is denied access to the prison's law library. Indeed, this litigation shows otherwise. Even if the warden's action was biased and retaliatory, removal of Ennis from his preferred work assignment was within the warden's authority and is not judicially reviewable.

We conclude that Ennis received the process due him for loss of privileges for infractions of prison rules, and that the warden acted within his authority in imposing those sanctions. We affirm denial of Ennis's petition for a writ of certiorari.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and JOHNSON, JJ.