Edward ENNIS, individually and on behalf of all others similarly situated, Plaintiff and Appellant,

v.

Mary DASOVICK, Medical Director, North Dakota State Penitentiary; Jeanne Folmer, Clerk, North Dakota State Penitentiary; Timothy Schuetzle, Warden, North Dakota State Penitentiary; and Elaine Little, Director, Department of Corrections and Rehabilitation, State of North Dakota; and other unknown parties; individually and in their official capacities, Defendants and Appellees.

Civ. No. 920339.

Supreme Court of North Dakota.

Sept. 9, 1993.

Edward Ennis, pro se.

Jean R. Mullen, Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

Edward Ennis's glasses are broken. He is an inmate at the State Penitentiary and wants the State to buy him a new pair. Seeking new glasses, Ennis brought a civil rights action on behalf of himself and "all others similarly situated." He sued the director of corrections, the warden, the medical director, a medical records clerk and "other unknown parties." Under Rule 12(b), N.D.R.Civ.P., the district court, on its own motion, dismissed Ennis's suit with prejudice for failure to state a claim upon which relief can be granted. Although Ennis may not sue on behalf of others, nor proceed against the unnamed "others," we conclude he has stated a claim for which relief can be granted. We, therefore, affirm in part, reverse in part, and remand for further proceedings.

I

Ennis alleges that on March 27, 1992, he formally notified Mary Dasovick, the medical director at the State Penitentiary, that his eyeglasses had been broken. Ennis alleges he has worn prescription eyeglasses for 28 years and "they are medically necessary for him to have correct vision." He requested an eye examination.

On April 10, 1992, Ennis says Jeanne Folmer, a medical records clerk at the penitentiary, advised him the frame for his eyeglasses was out of manufacture and a different frame and lenses would have to be ordered. Folmer said the frame could be temporarily repaired for $4 but he must sign to authorize transfer of the money from one of his penitentiary accounts. Ennis had 47¢ in his "spendable" account and $150 in his tempo-

rary aid ("T.A.") account. Ennis contends the T.A. funds cannot be used until his release from prison.

After an eye examination by an optometrist on May 5, 1992, Ennis was told he could "pick out" a new pair of eyeglasses for $146. Ennis refused to sign the order form for the eyeglasses because, he contends, it stated he agreed to pay for them. Dasovick told Ennis that he would receive no new eyeglasses because penitentiary policy permitted only one free pair paid for by the State and Ennis had received his free pair two years earlier.[1] He further claims two other prisoners had received new eyeglasses without having to pay for them. Ennis appealed having to pay for the new "medically prescribed eyeglasses" to Elaine Little, Director of the Department of Corrections and Rehabilitation. Little upheld Dasovick's decision. Ennis claims he suffers "severe eye strain, eye deterioration, headaches, and mental anguish" because of the penitentiary's refusal to provide him with new eyeglasses.

In August 1992, Ennis brought this 42 U.S.C. § 1983 action against Dasovick, Folmer, Little, and Warden Timothy Schuetzle in their individual and official capacities seeking damages, a declaratory judgment, and an injunction for the defendants' alleged deliberate indifference to his serious medical needs violating the federal and state constitutions. He alleges the defendants' attempted seizure of his money violated N.D.C.C. § 12–48–15(1) and (4). Ennis submitted a petition to proceed in forma pauperis, which was granted by the trial court, and a motion for appointment of counsel.

In October 1992, the trial court, on its own initiative, ordered dismissal of Ennis's action. The trial court concluded:

"The gravamen of this action is that the penitentiary won't provide free eyeglasses to him.

"Whether they do or don't have to isn't directly decided by the order today. And very probably they don't. See *Fant v.*

---

1. In their answer, the defendants admit this point in its entirety, with no claim of any exception for inability to pay.

*Fischer* [*Fisher*], 414 F.Supp. 807 (W.D.Okla.1976).

"And even if they did, it can't be ordered by injunction. Injunction prohibits the doing of an act or requires the status quo to be maintained. Chapter 32–06, N.D.C.C. Even were this action treated as one in mandamus (to compel the doing of an act) under Chapter 32–34, N.D.C.C., there is no clear right of relief in this case. *Fant,* *supra,* at 808–809.

\*     \*     \*     \*     \*     \*

"The second issue raised is Mr. Ennis' request for court-appointed counsel. That request is denied as being outside the constitutional or statutory authority of this court. And if not, an appointment here is unwarranted as surely this is not an 'exceptional case of public interest.' It is only Mr. Ennis' personal interest which is involved and seeks vindication.

"The plaintiff's various motions are ordered denied and the action itself is ordered dismissed."

Ennis appealed.

## II

### A

■ In an appeal from a Rule 12(b) dismissal, we construe the complaint in the light most favorable to the plaintiff, taking as true the allegations in the complaint. *Livingood v. Meece,* 477 N.W.2d 183, 188 (N.D. 1991). A trial court may, on its own initiative, and in the cautious exercise of its discretion, dismiss a complaint for failure to state a valid claim under Rule 12(b), N.D.R.Civ.P. *Patten v. Green,* 397 N.W.2d 458, 459 (N.D. 1986). This power must be exercised sparingly and with great care to protect the rights of the parties. *Albrecht v. First Federal Sav. & Loan Ass'n,* 372 N.W.2d 893, 894 (N.D.1985). A trial court should dismiss under Rule 12(b) only when certain it is impossible for the plaintiff to prove a claim for which relief can be granted. *Livingood* at 188.

### B

■ Deliberate indifference to a prisoner's serious medical needs violates the eighth amendment to the United States Constitution. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle,* 429 U.S. at 102, 103, 97 S.Ct. at 290, 50 L.Ed.2d at 259, the Supreme Court ruled that, following the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" embodied in the eighth amendment, the government must "provide medical care for those whom it is punishing by incarceration." The *Estelle* standard is two-pronged: whether there has been a deliberate indifference by prison officials, and whether the prisoner's medical needs are serious. *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989).

■ Denial of eyeglasses can, under some circumstances, cause serious harm to a prisoner and constitute an eighth amendment violation. *See Newman v. State of Alabama,* 503 F.2d 1320, 1331 (5th Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). Whether deprivation of eyeglasses constitutes deliberate indifference to serious medical needs depends on the facts and circumstances of the particular case and the degree of visual impairment suffered by the prisoner.

For example, a plaintiff's allegation in his complaint that he had been deliberately deprived of his eyeglasses although he was legally blind was found to state a cognizable claim for deliberate indifference to serious medical needs in *Williams v. ICC Committee,* 812 F.Supp. 1029, 1032 (N.D.Cal.1992). Deprivation of eyeglasses under other circumstances has been rejected as constituting an eighth amendment violation. *See, e.g., Harris v. Murray,* 761 F.Supp. 409, 413 (E.D.Va.1990) [summary judgment dismissing claim was proper where plaintiff alleged only that he was denied reading glasses for 10 days while in segregation; "this treatment is not so harsh as to be cruel and unusual treatment"]; *Borrelli v. Askey,* 582 F.Supp. 512, 513 (E.D.Penn.), *aff'd,* 751 F.2d 375 (3rd Cir.1984) [summary judgment dismissing claim was proper where plaintiff alleged only that correction officer refused to allow him to take prescription eyeglasses with him when transferred to another facility and defendants produced optometrist's affidavit that said plaintiff had "very slight visual impairment" and that "he had seen a substantial

number of patients with similar readings who had not worn eyeglasses and had not sustained any visual impairment or physical difficulties"]; *Nicholson v. Choctaw County, Ala.,* 498 F.Supp. 295, 308 (S.D.Ala.1980) [a claim was rejected following trial because county jail officials, who "hold prisoners for a relatively short period of time," are under no duty to provide eyeglasses for inmates]; *Kersh v. Bounds,* 364 F.Supp. 590, 592–593 (W.D.N.C.1973), *reversed on other grounds,* 501 F.2d 585 (4th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975) [a claim was properly dismissed because "stipulated facts are not developed sufficiently to show that Rogers' eyesight was so bad and lighting conditions of the prison were so poor that to deny him eyeglasses and thus the opportunity to read and write … violates his right not to be subject to cruel and unusual punishment"]; *De Flumer v. Dalsheim,* 122 A.D.2d 872, 873, 505 N.Y.S.2d 919, 920 (1986) [a claim for metal frame glasses instead of plastic frame glasses should have been dismissed where prison optometrist who prescribed plastic frame glasses stated in affidavit that "metal frame glasses were not necessary or medically indicated"].

▮▮▮ To state a constitutional claim under § 1983, the plaintiff must allege facts tending to show that the defendants were deliberately indifferent to the plaintiff's serious medical needs and that they acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–2255, 101 L.Ed.2d 40, 48–49 (1988). There is no heightened pleading standard in § 1983 civil rights actions. *See Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517, 524 (1993). Construing the complaint in the light most favorable to Ennis, we believe he has stated a claim for deliberate indifference to his serious medical needs.

Although Ennis may have difficulty proving a serious medical need for new eyeglasses, we cannot say at this stage of the proceedings that the allegations in his complaint are so lacking that the complaint fails to state a claim upon which relief can be granted.

**C**

▮▮▮ The defendants assert, however, that requiring Ennis to pay for his eyeglasses out of his prison accounts results in no constitutional or statutory violations. Ennis claims that requiring him to pay for the eyeglasses from the $150 in his "T.A." account would violate state law. When the District Court dismissed the complaint, § 12–48–15(1) and (4), N.D.C.C., provided:

> "*12–48–15. Disposition of moneys earned—Warden to keep account of money earned by inmates—Investment in interest-bearing accounts.*

> "1. The warden of the penitentiary shall keep an account for each inmate. Fifty percent of the earnings of inmates must *be deposited to the credit of their account until they have accumulated* in that account a sum of money as provided by penitentiary rules and regulations from their earnings at the penitentiary, and the other fifty percent of the earnings must be paid to the inmates on a regular basis. All moneys in the inmate's account must be paid to the inmate in full when discharged.

> \*    \*    \*    \*    \*    \*

> "4. The warden, through the staff, is responsible for guiding inmates in making proper use of their funds to pay their obligations, including the payment of court costs, court-appointed counsel fees, and court-ordered restitution, and to provide for their dependent relatives, or to provide for their own medical, surgical, or dental treatment or services not generally provided by the state. *The sum of money* as provided by penitentiary rules and regulations from each inmate's earnings *required to be deposited and accumulated* by this section *shall not be available to the inmate until discharge.* The remainder of the inmate's earnings, including interest earned, shall be available to the inmate under the supervision and con-

trol of the warden or designee." [Emphasis Added.]

We believe these provisions do not allow for medical expenses to be paid out of an inmate's discharge account. Subsection (1) requires the warden to keep an account of the earnings of each inmate. The warden is directed to deposit 50 percent of an inmate's earnings in what Ennis refers to as a "T.A." account "until they have accumulated ... a sum of money as provided by penitentiary rules and regulations...." The remainder of the inmates earnings are to "be paid to the inmates on a regular basis." Ennis refers to this money as his "spendable" account. Subsection (4) specifically refers to the "sum of money as provided by penitentiary rules and regulations ... required to be deposited and accumulated" and directs that this amount [the "T.A." account] "not be available to the inmate until discharge."

■ The defendants argue that requiring payment from Ennis's "T.A." account comports with the statute's directive that inmates "provide for their own medical ... treatment". This reading, however, directly conflicts with the requirement that an inmate's "T.A." account not be available until discharge. We construe statutory provisions to harmonize them and to avoid conflicts. *State v. Beilke*, 489 N.W.2d 589, 593 (N.D. 1992).

We hold that these statutory provisions only allow for the payment of medical expenses out of an inmate's "spendable" account. Construing the statute to allow for payment of medical expenses from only an inmate's "spendable" account avoids conflict with the requirement that the "T.A." account be unavailable until the inmate's discharge. This construction also furthers the obvious public policy for the "T.A." account, which is to provide inmates with sufficient funds upon release from prison to assist them in readjustment to society at large without additional aid from the state. *See, e.g., Cumbey v. State*, 699 P.2d 1094, 1098 (Okl.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 115, 88 L.Ed.2d 94 (1985).

■ Section 12–48–15(1) and (4) were recently amended by the legislature to allow funds from an inmate's "T.A." account to be released prior to discharge if "authorized by the warden." 1993 N.D.Sess.Laws, Ch. 115, § 1. This change, however, does not alter our holding. Statutes are generally not retroactive unless expressly declared so by the legislature. N.D.C.C. § 1–02–10; *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979).

D

■ Several courts have held that a governmental entity under a duty to provide prisoners with necessary medical care is liable for the costs of that care only if the prisoner is indigent. *See, e.g., Metro. Dade County v. P.L. Dodge Foundations*, 509 So.2d 1170, 1174 (Fla.Ct.App.1987); *Smith v. Linn County*, 342 N.W.2d 861, 863 (Iowa 1984); *Dodge City Medical Center v. Board of County Commissioners*, 6 Kan.App.2d 731, 732, 634 P.2d 163, 165 (1981); *Harrison Memorial Hospital v. Kitsap County*, 103 Wash.2d 887, 890, 700 P.2d 732, 735 (1985).

In this case, Ennis filed simultaneously with his complaint a petition and affidavit to proceed in forma pauperis, which was granted by the trial court. Ennis stated that "because of my poverty, I am unable to pay the costs of said proceeding or give security therefor;" that he owns no real estate, stocks, bonds, notes, automobiles or other valuable property; and that he owns "cash in the amount of $150.00 in a 'frozen' prison account designated as release money by prison officials and $0.47 in a 'spendable' account." In effect, Ennis asserts he only has assets of $150.47 to pay the $146 needed for the new eyeglasses. We believe Ennis has raised at least an inference of his indigency and inability to pay for necessary medical care at this stage of the proceedings. In this respect, Ennis's situation differs from the case relied on by the trial court, *Fant v. Fisher*, 414 F.Supp. 807, 809 (W.D.Okla. 1976), which involved "a non-indigent prisoner whose ability to pay is not questioned." If Ennis establishes his indigency and deliberate indifference to a serious medical need, it is irrelevant that the amounts in Ennis's prison accounts are minimally sufficient to purchase the asserted medically-necessary eyeglasses. *See Ancata v. Prison Health*

*Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985); *Archer v. Dutcher,* 733 F.2d 14, 17 (2nd Cir.1984).

### E

The trial court incorrectly concluded that injunction was an inappropriate form of relief; and that, even if injunction was an appropriate form of relief, it should not be granted because there is no "clear right" to relief in this case.

A writ of injunction under N.D.C.C. Chapter 32–06 is the correlative of the writ of mandamus under N.D.C.C. Chapter 32–34; the former restrains action while the latter compels action. *State ex rel. Peterson v. Olson,* 307 N.W.2d 528, 532 (N.D.1981). We have recognized the availability of injunction in several governmental contexts. *See, e.g., Barr v. Barnes County Board of County Commissioners,* 194 N.W.2d 744, 749 (N.D. 1972). In *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 790, 59 N.W.2d 849, 866 (1953), we specifically recognized that public officers could be compelled to comply with the law "through mandamus, or mandatory injunction buttressed by contempt proceedings." The effect of the two procedures is essentially the same.

■■■ Requesting relief through an injunction instead of mandamus does not justify dismissal of a complaint. *See Olson* at 532; *Holcomb v. Hamm,* 77 N.D. 154, 157, 42 N.W.2d 70, 71 (1950). Under either procedure, the plaintiff must have a clear legal right to the performance of the act and there can be no plain, speedy and adequate remedy in the ordinary course of law. *Old Broadway Corp. v. Backes,* 450 N.W.2d 734, 736 (N.D.1990); *Hamm* at 160, 42 N.W.2d at 73. " 'The law must not only authorize the act, but it must require it to be done.' " *Mini Mart, Inc. v. City of Minot,* 347 N.W.2d 131, 136 (N.D.1984) [quoting *Midland Produce Co. v. City of Minot,* 70 N.D. 256, 258, 294 N.W. 192, 193 (1940) ].

■■■ Dismissal because Ennis has failed to establish a clear legal right to compel prison authorities to provide him with free eyeglasses was premature. Generally, a clear constitutional right to the performance of an act cannot be decided on the pleadings alone, unless the complaint discloses with certainty the unavailability of the relief sought. *See Rudnick v. City of Jamestown,* 463 N.W.2d 632, 638–641 (N.D.1990); *Olson* at 532.

### F

■■■ The trial court did not specifically address Ennis's request for a declaratory judgment under N.D.C.C. Chapter 32–23. Declaratory judgment may be appropriate in this case. The "chapter is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally." N.D.C.C. § 32–23–12. "A court of record within its jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." N.D.C.C. § 32–23–01. This court has previously stated as dicta that, generally, a declaratory judgment is intended to clarify the rights of parties before those rights are violated; and once those rights are violated, declaratory relief is inappropriate. *Allen v. City of Minot By and Through Mayor,* 363 N.W.2d 553, 554 n. 1 (N.D.1985). The statement is overly broad. *See Blackburn, Nickels v. National Farmers,* 452 N.W.2d 319, 321 (N.D.1990). In *Allen,* the plaintiff was "not asking that his prospective rights . . . be determined", he was only "seeking redress for a violation of his rights which, he allege[d], ha[d] already occurred." *Allen* at 554 n. 1. Here, since Ennis claims continuing, as well as a past, violation of his rights, declaratory relief is available, and may be appropriate.

### G

■■■ We agree with the defendants that the trial court properly dismissed the claims for monetary damages against the defendants in their official capacities.[2] *See Livingood* at 189–190. However, because official-capacity actions for prospective injunctive relief are not treated as actions against the

---

**2.** Ennis has not challenged the doctrine of sovereign immunity in this case.

State, the trial court erred in dismissing Ennis's request for mandatory injunctive relief against the defendants in their official capacities. *Livingood* at 190.

■ The defendants claim they are entitled to qualified immunity and statutory immunity under N.D.C.C. § 32–12.1–15, insofar as Ennis's claims seek to hold them liable in their personal capacities. Qualified immunity analysis, however, requires the court to consider the operation of the rule in the context of the circumstances with which the official was confronted. *Livingood* at 194. Under N.D.C.C. § 32–12.1–15(2), liability cannot be imposed unless the state employee's actions constitute "reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct." The record in this case is simply too sparse for resolution of these issues at this stage of the proceedings. *See Livingood* at 194–195.

### III

■ Ennis's assertion that the trial judge was biased against him because the judge dismissed the complaint on his own is without merit. A disagreement on legal questions does not evidence bias. *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 879 n. 10 (N.D.1993).

### IV

■ Ennis also claims that the trial court erred in failing to appoint counsel to represent him in this matter. In *Ennis v. Schuetzle*, 488 N.W.2d 867, 869 (N.D.), *cert. denied*, —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992), we held that "[u]nless a liberty interest or a fundamental right may be adversely affected, a prisoner has no inherent right to counsel at public expense for civil litigation if he is allowed to plead and appear personally." Ennis has not asserted violation of a liberty interest or a fundamental right. Moreover, even if courts have inherent authority to appoint counsel in civil matters, we find no abuse of discretion in the trial court's refusal to do so. Ennis is an experienced litigant. The motions and briefs he has filed in this and other actions evidence his ability to present his claim. He has demonstrated familiarity with procedural rules and legal principles. His briefs demonstrate sufficient access to legal materials and proficiency in using those materials. Counsel need not be appointed for a prisoner who is an experienced litigant and who is "familiar with the rudiments of the legal system." *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir.1987) [construing 28 U.S.C. § 1915(d) (1988), which authorizes appointment of counsel in § 1983 cases only if exceptional circumstances exist].

### V

■ Ennis entitles his action as "Edward Ennis, individually and on behalf of all others similarly situated". Ennis apparently seeks to maintain a class action. He has not, however, complied with Rule 23, N.D.R.Civ. P., relating to class actions. A pro se plaintiff may not represent others. N.D.C.C. § 27–11–01. *See Hertz v. Cleary*, 835 P.2d 438, 442 (Alaska 1992); *People ex rel. Thompson v. Property Tax Appeal Bd.*, 22 Ill.App.3d 316, 317 N.E.2d 121, 125 (1974). Further, inmates "cannot bring claims on behalf of other prisoners." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985). Accordingly, Ennis may not proceed on behalf of others similarly situated.

As defendants, Ennis includes "other unknown parties." A plaintiff may proceed, when "ignorant of the name of a party", under Rule 9(h), N.D.R.Civ.P. Nevertheless, Ennis alleges no claim against such unknown parties, and therefore they are appropriately dismissed under Rule 12(b), N.D.R.Civ.P.

### VI

We have considered the other arguments raised by the parties and deem their resolution unnecessary for disposition of this appeal.

We affirm the parts of the order dismissing Ennis's requests for court-appointed counsel, dismissing the claims for monetary damages against the defendants in their official capacities, dismissing claims on behalf of others similarly situated, and dismissing claims against other unknown parties. We

reverse the remainder of the order and remand this case for further proceedings.

NEUMANN, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring and dissenting.

I believe the limitation in section 12–48–15, NDCC, that the money in the account therein established "shall not be available to the inmate until discharge" means exactly that. Where the money is used by the prison administration to provide "necessary medical care," necessary to the point that denial thereof constitutes an eighth amendment violation, I do not believe the prohibition is applicable. Although the money is used by the prison administration for the inmate, it is not "available to the inmate" as proscribed in the statute. However, in this instance, the amount of money in the account appears barely sufficient to cover the glasses and may not in fact be sufficient. Therefore, I agree with the majority that the administration may be required to provide the glasses if they are proven to be "necessary medical care," a matter which is yet to be determined.

Construing the complaint in the light most favorable to Ennis, I cannot agree that he has stated a claim for *deliberate indifference* to his medical needs. At best, because Ennis arguably has sufficient money in the account to pay for the glasses, this is a dispute as to whether the account may be used to pay for the glasses under the statute. There is no indication that if Ennis proves a serious medical need for eyeglasses and is unable to pay for them that the prison administration will refuse to provide them. If Ennis is able to pay for them, I do not believe the prison administration is required to do so nor do I understand the majority opinion to so hold. If, as the majority opinion holds (with which I have already expressed my disagreement) the prison administration cannot use the money in Ennis's section 12–48–15, NDCC, account for the glasses, there is no indication that the administration will refuse to adhere to the majority's construction of the statute. The matter of the availability of the account

is sufficiently answered through Ennis's request for declaratory relief.

To elevate the dispute as to the interpretation of the statute to "deliberate indifference to a prisoner's serious medical needs" does more than construe the complaint in the light most favorable to Ennis. It places the administration in jeopardy of having to defend a lawsuit for civil rights violators each time it disagrees with an inmate over construction of a statute and subjects the individual defendants to unwarranted harassment. The money at issue is, after all, provided by the State to Ennis. He has no constitutional right to it as illustrated by the 1993 legislation which expressly makes the account available for the very purpose Ennis contends it was not available at the time he started this action. *See* 1993 N.D.Sess.Laws, Ch. 115, § 1.

I would remand to the trial court for the limited purpose of determining whether or not there is a serious medical need for eyeglasses for Ennis and, if so, whether or not Ennis has sufficient funds to pay for them, including the funds in the section 12–48–15, NDCC, account. If sufficient funds are not available, I would instruct the trial court to order the administration to pay for the glasses. In all other respects, I would affirm the trial court's order dismissing the consolidated claims made by Ennis.